UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Karen Saunders, <br><br> Plaintiff, <br><br> v. <br><br> Dyck-O'Neal, Inc., <br><br> Defendant. | Case No.: 1:17-cv-00335-GJQ-RSK <br> Hon. Judge Gordon J. Quist <br> Magistrate Judge Ray Kent <br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

Pursuant to Fed. R. Civ. Proc. 56, Defendant Dyck-O'Neal, Inc. ("Dyck-O'Neal"), submits this reply brief in support of its motion for summary judgment.

**I.      BACKGROUND**

Plaintiff Karen Saunders ("Plaintiff") asserts in this putative class action that she is entitled to statutory damages under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), because Dyck-O'Neal placed calls to her cellular telephone number without her prior express consent. Plaintiff is wrong. **Dyck-O'Neal never called Plaintiff's wireless telephone**. Dyck-O'Neal, instead, employed a proprietary voicemail technology to deliver a voicemail message directly to Plaintiff's wireless service provider's platform, which was then made available to her for retrieval at her election, if at all.

The TCPA proscribes the use of certain equipment "to *make any call* (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the

1

call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). However, the TCPA does not impose liability for voicemail messages, delivered directly to a voicemail service provider, that never pass through a person's cellular telephone line or result in a delivery charge to the subscriber. Neither the Federal Communications Commission ("FCC"), acting pursuant to its rulemaking authority, nor any court has ever applied the statute in this way.

Despite Plaintiff's herculean efforts to obfuscate the facts and distort the law, Dyck-O'Neal did not "make a call" to a wireless phone number as expressly required under the TCPA and leaving a voice mail message on a wireless service provider's platform is simply not covered by the Act. What is more, Plaintiff has not and cannot show that she was charged for delivery of the subject voicemails as also required under the Act. Although Plaintiff invites this Court to expand the Act's reach in this case of first impression, the plain language of the Act forecloses such a result. For the reasons set forth in Dyck-O'Neal's motion and this reply, Dyck-O'Neal respectfully request that the court enter judgment in Dyck-O'Neal's favor.

## II. SUMMARY OF UNCONTROVERTED FACTS

### A. The Voicemail Technology At Issue Bypasses Cellular Phone Lines Altogether

VoApps, LLC ("VoApps") is a third-party technology provider that offers voicemail solutions to businesses such as Dyck-O'Neal, including a proprietary voicemail service called DirectDrop Voicemail ("DirectDrop").

DirectDrop bypasses the wireless telephone and telephone subscriber altogether communicating, instead, with the voicemail platform of the wireless service provider. To do this, VoApps' patented Adapt-Sig technology creates and transmits a series of network signaling events into the network to make a business landline call to a business class telephone number assigned to the wireless service provider's voicemail platform. Once this connection is established, the voice

message is played into the voice mail box without ever placing a call to the subscriber's mobile handset.

### B. DirectDrop Messages Do Not "Reside" On Subscribers' Phones Or Result In Charges To The Subscriber

Once a voicemail message is delivered to the voicemail service provider's platform, the subscriber receives a message waiting indicator from the carrier. Such messages do not result in charges to the subscriber or appear as a received call on the subscriber's cellular telephone bill because no call is actually made to the mobile telephone number assigned to the subscriber. Subscribers may retrieve the voicemail message at a time of the subscriber's choosing or simply delete the message.

### III. ARGUMENT

The TCPA governs the use of certain automated technology to place calls to consumers' phones; it does not impose liability for voicemail messages that do not pass through consumers' phone lines. Indeed, voicemail service is expressly unregulated. Neither the FCC, acting pursuant to its rulemaking authority, nor any court has ruled that voicemail message delivery platforms that bypass a phone line are subject to the TCPA.

Plaintiff's expert, Randall Snyder, goes to great lengths to cloud the issues before the Court in hopes of creating a question of fact sufficient to prevent summary judgment. However, try as he may to conflate different technologies and legal authorities to bolster Plaintiff's position, his conclusions are not supported by the facts in this case and are premised on speculation, self-serving analogies and, ultimately, a different and more expansive definition of the TCPA than either the plain text, case law or FCC guidance actually support.

Given that Plaintiff carries the burden of proving that there are certain facts creating a genuine issue for trial, and because Plaintiff cannot meet that burden here, the Court should find

3

that Plaintiff has failed to demonstrate that the TCPA applies to Defendant's conduct herein as a matter of law.  This is especially true here, where the facts present a novel and sweeping issue of first impression, and a finding that the TCPA applies would expose unsuspecting parties such as Dyck-O'Neal to the potential of ruinous liability.

### A.	The TCPA Does Not Apply To The Conduct At Issue

The TCPA proscribes the use of certain automated equipment "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ."  47 U.S.C. § 227(b)(1)(A)(iii).  Congress also directed the FCC to "prescribe regulations to implement the requirements of this subsection . . . ."  47 U.S.C. § 227(b)(2).  The FCC, in turn, reiterated that there can be no liability unless a call is placed "[t]o any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."  47 C.F.R. § 64.1200(a)(1)(iii).

The statutory and regulatory structure is clear:  TCPA liability exists only when an autodialed or pre-recorded call is made to the mobile telephone number of a plaintiff or a telephone number of another wireless service for which the plaintiff is charged.  Voicemail service and the process by which voicemail is deposited on a carrier's platform for access by a subscriber is neither a call made to a mobile telephone number nor a call for delivery of which Plaintiff (or any consumer) is charged, and, indeed, is a service that is not regulated by the TCPA at all.

1.  **Voicemails Delivered Directly To A Carrier's Voicemail System Are Not Regulated Under The TCPA**

Cellular telephone and other radio (or wireless) common carrier services are referred to collectively as common carrier services and are governed by Title II of the Communications Act, as amended by the Telecommunications Act of 1996. 47 U.S.C. § 201 *et seq.*; Pub. L. No. 104-104, 110 Stat 56 (1996). Title II of the Communications Act, which includes the TCPA, expressly does *not* regulate voicemail.

The Communications Act identifies two categories of services that common carriers provide: "telecommunications services" and "information services." *Id.* "The term 'telecommunications service' means the offering of telecommunications[1] for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used." 47 U.S.C. § 153(53). In contrast, "[t]he term 'information service' means the offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications . . . ." 47 U.S.C. § 153(24). Information services include so-called "enhanced services." *See Application of BellSouth Corporation, BellSouth Telecommunications, Inc., and BellSouth Long Distance, Inc., for Provision of In-Region, InterLATA Services in Louisiana*, CC Docket No. 98-121, Memorandum Opinion and Order, 13 F.C.C. Rcd. 20599 ¶ 314 (1998) ("*BellSouth Louisiana Order*") (stating that "the definition of 'information services' under the 1996 Act includes those services previously classified as 'enhanced services,'" and noting that information services and telecommunications services are "mutually exclusive."); *see also U.S. W. Commc'ns v. Hix*, 183 F. Supp. 2d 1249, 1253

---

[1] In turn, the term "telecommunications" means "the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received." 47 U.S.C. § 153(50). In other words, a traditional phone call unbundled from any other service.

(D. Colo. 2000) ("[T]he FCC has confirmed that 'information services' are synonymous with 'enhanced services.'").

The distinction between "telecommunications services" and "information or enhanced services" is **crucial**; telecommunications services are subject to Title II of the Communications Act, whereas information or enhanced services are expressly "not regulated under title II of the Act." 47 C.F.R. § 64.702(a). And, the FCC has determined that voicemail is an enhanced service, and not a telecommunications service. *BellSouth Louisiana Order*, 13 F.C.C. Rcd. 20599 ¶ 314; *see also MCI Telecommunications Corp. v. Sprint-Florida Inc.*, 139 F. Supp. 2d 1342, 1346 (N.D. Fla. 2001) (noting that the "FCC has . . . determined that voice mail is "information service," not "telecommunications service," within the meaning of the Act's definitions."); *U.S. W. Commc'ns*, 183 F. Supp. 2d at 1253 ("[V]oicemail is an 'enhanced service.'"); *In the Matter of Implementation of the Telecommunications Act of 1996: Telecommunications Carriers' Use of Customer Proprietary Network Information and Other Customer Information,* CC Docket Nos. 96-115 and 96-149, Order and Further Notice of Proposed Rulemaking, 13 F.C.C. Rcd. 8061, ¶ 72 (1998) ("Because information services generally, and in particular those few identified in the record (*i.e.*, call answering, voice mail or messaging, voice storage and retrieval services, fax store and forward, and Internet access services), are provided to consumers independently of their telecommunication service, they neither are used by the carrier nor necessary to the provision of such carrier's service."). Thus, Title II of the Communications Act, which includes the TCPA, expressly does not regulate voicemail services such as the messages at issue in this case which were not transmitted to Plaintiff's cellular phone using an automatic telephone dialing system as mandated by the Act.

### 2. Dyck-O'Neal Did Not Make A Call To Plaintiff's Cellular Telephone Number

The TCPA does not define the term "call," *see* 47 U.S.C. § 227(b)(1) but, as Plaintiff has correctly noted, the FCC has explicitly stated that the TCPA's restrictions on the use of ATDS "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, **provided the call is made to a telephone number assigned to such service**." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003) (emphasis added); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953-54 (9th Cir. 2009) (concluding that the FCC's interpretation—that a call includes both voice and text provided the call is made "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service . . ."—is reasonable because "the ordinary, contemporary, and common meaning of the verb 'to call' . . . in this context [is] 'to communicate with or try to get into communication with a person by a telephone.'"). Thus, in at least the context of the section governing the supposed autodialed and prerecorded calls at issue, the TCPA and the FCC contemplate that <u>**a call involves dialing a telephone number for a communication directly to the wireless handset of a subscriber**</u>.

This reasoning is further supported by the fact that the FCC has opined that "a call placed to a wireline [*i.e.*, a landline] number that is then forwarded, at the subscriber's sole discretion and request, to a wireless number or service, does not violate the ban on autodialed and prerecorded message calls to wireless numbers." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788, 3807 ¶ 48 (2005). In other words, this section of the TCPA covers only calls made directly to wireless telephone lines. Indeed, various courts in this district have made clear that to state a claim under the TCPA, "a plaintiff must establish that a

defendant *made any call* using an automatic telephone dialing system [or a prerecorded or artificial voice] *to his or her cellular telephone* for a nonemergency purpose." See, for e.g., *Strand v. Corinthian Colleges, Inc.*, 2014 WL 1515494, at 2 (W.D. Mich. Apr. 17, 2014) (emphasis added).

Contrary to Plaintiff's assertions, Dyck-O'Neal did not call Plaintiff's cellular telephone. A call was not made because Plaintiff's phone number was not dialed, and her phone could not, and did not, receive any voice communication. Instead, Dyck-O'Neal used VoApps' DirectDrop voicemail system to leave the messages at issue. And, as the record makes clear, this system bypassed Plaintiff and her telephone number altogether, instead, creating direct communication between a business landline and the voicemail server system of Plaintiff's wireless carrier.

To do this, VoApps' patented Adapt-Sig technology created and transmitted a series of network signaling events into the network. Once a connection was established, the voice message was then played into the voice mail box from VoApps' server without ever placing a call to Plaintiff's mobile handset. Tellingly, Plaintiff, concedes that she would "pick up [her] phone and see that there were messages waiting for me." (Saunders Declaration, ¶ 7). While Plaintiff may not have been able to "differentiate" between the manually dialed calls made by directly to her mobile handset and the DirectDrop messages delivered to her carrier's voicemail server system, the fact remains that neither contact implicates the TCPA as evidenced by the plain language of the Act.

Not only did Dyck-O'Neal not dial Plaintiff's cellular telephone, but the conduct at issue—the act of depositing a voicemail message directly on a voicemail service without directly dialing a cellular telephone—is expressly unregulated. Accordingly, this Court should find that Dyck-O'Neal did not call Plaintiff's cellular telephone line.

### B. Plaintiff Was Not Charged For Delivery Of The Voicemail Message.

Alternatively, if a plaintiff cannot demonstrate that a call was made to her cell phone, she must prove that a call was made to "any [other] service for which the called party is charged . . . ." 47 U.S.C. § 227(b)(1)(A)(iii); *see also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1257-58 (11th Cir. 2014) ("[W]e conclude that the phrase 'for which the called party is charged for the call' modifies only 'any service' and not the other terms of the series."). Because Plaintiff did not receive a call on her cellular telephone handset, she must demonstrate that she was charged when the message was delivered to her voicemail service.

Plaintiff has not and cannot make this showing. As noted above, VoApps' DirectDrop technology delivers voicemail messages without showing up on the recipient's phone bill. Such messages do not result in charges to the subscriber or appear as a received call on the subscriber's cellular telephone bill because no call is actually made to the mobile telephone number assigned to the subscriber.

Not surprisingly, Plaintiff's declaration makes no mention of any such charges. Although Snyder surmises that such charges *may* be bundled in certain plans and, therefore, "may not be indicated as line-item fees on a cellular phone bill for the overall subscription[,]" speculation is no substitute for evidence particularly in the context of expert testimony which must be based on the application of "scientific, technical or other specialized knowledge." Fed. R. Evid. 702(a). As Plaintiff has not and cannot demonstrate that she was charged for the voice messages at issue, Plaintiff's claims fail for this reason, too.

### 3. Plaintiff Did Not Suffer The Type Of Harm The TCPA Was Designed To Prevent.

As this and other courts have made clear, "[t]he TCPA is designed to protect individual consumers from receiving intrusive and unwanted *telephone calls*." *Reed*, 26 F. Supp. 3d at 1290

(emphasis added).  The TCPA was enacted to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, *automated telephone calls to the home* and to facilitate interstate commerce by restricting certain uses of facsimile (fax) machines and automatic dialers." S. Rep. No. 102-178, at 1 (1991), reprinted in 1991 U.S.C.C.A.N. 1968.  The TCPA was enacted in response to an increasing number of consumer complaints arising from the increased number of telemarketing *calls*. *See id*. at 2. "In particular, Congress reported, '[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their *homes*.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (emphasis added) (addressing similar concerns with respect to calls to the plaintiff's cellular phone, and citing TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings)).  Comments made on the Senate floor by the TCPA's sponsor, Senator Hollings, reflect the intended scope of the Act:  "Computerized calls are the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." *Mims*, 565 U.S. at 384 (citing 137 Cong. Rec. 30821-30822 (1991)).

The TCPA was never designed to protect a person from the receipt of voicemails not left on the person's phone. *Voicemail* messages delivered directly to a voicemail service provider do not implicate the same concerns as autodialed *telephone calls*.  There is no voice channel through which a voice communication can be made, and no function on the telephone that would allow the subscriber to answer the "call" or communicate back instantaneously. Unlike the computerized dialing methods the statute was designed to prevent, the voicemail technology here does not directly dial or make a call to a cellular telephone line and does not involve the potential annoyance of dropped or dead air calls.  Consumers have the freedom to dial into their carrier's voicemail

service platform to pick up the voicemail or not, to listen to it or not, as and when they see fit, and may do so without incurring any delivery charges.

It is telling that despite the fact that Congress directed the FCC to "prescribe regulations to implement the requirements of this subsection," the FCC has never, in any of its dozens of declaratory rulings over the TCPA's quarter-century lifespan, equated the delivery of a voicemail message *directly to Plaintiff's wireless service provider's message platform* with making a call to a cellular phone number. Here, Dyck-O'Neal sought out VoApps' DirectDrop technology in order to communicate in a passive, unobtrusive manner. Indeed, VoApps expressly represented that its technology did not implicate the TCPA. To create new law holding that the TCPA applies to such technology would undermine settled principles of "fair notice, reasonable reliance, and settled expectations" creating ruinous liability. For this reason, too, the Court should decline to adopt Plaintiff's novel view of liability.

### VII. CONCLUSION.

The conduct at issue plainly falls outside the present scope and stated purpose of the TCPA. Accordingly, Dyck-O'Neal respectfully requests that this Court either grant its motion for summary judgment and award all other relief as is juts and proper.

Respectfully Submitted,

/s/ Charity A. Olson
Charity A. Olson (P68295)
**BROCK & SCOTT, PLLC**
2723 S. State St., Ste. 150
Ann Arbor, MI 48104
(734) 222-5179
charity.olson@brockandscott.com

Dated: June 29, 2018

## CERTIFICATE OF SERVICE

      I, Charity A. Olson, hereby state that on June 29, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

<u>/s/ Charity A. Olson</u>
Charity A. Olson (P68295)
**BROCK & SCOTT, PLLC**
