UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN SAUNDERS,

      Plaintiff,

v.                                      Case No. 1:17-CV-335

DYCK O'NEAL, INC.,                       HON. GORDON J. QUIST

      Defendant.

_____/

## OPINION AND ORDER DENYING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On April 12, 2017, Plaintiff, Karen Saunders, filed an action under the Telephone Consumer Protection Act (TCPA) against Defendant, Dyck O'Neal, Inc. The facts arise out of Dyck O'Neal's efforts to collect a mortgage deficiency that Saunders alleges her ex-husband owes. From 2015 through 2017, Dyck O'Neal called repeatedly and left a number of voicemails on Saunders' phone. Dyck O'Neal used a vender called VoApp to leave prerecorded "direct drop" voicemails. From April 2016 to April 2017, Dyck O'Neal left approximately thirty of these voicemail messages on Saunders' phone. Saunders alleges that these voicemails are a violation of the TCPA. Dyck O'Neal filed a motion for summary judgment, arguing that the voicemails are not a violation. (ECF No. 35.) The matter is fully briefed. For the reasons that follow, the Court will deny Dyck O'Neal's motion.[1]

---

[1] Dyck O'Neal argued that it is entitled to judgment as to Saunders' claims related to Dyck O'Neal's phone calls using Avaya desk phones. Saunders stated that she does not wish to challenge these calls—"a position that was clearly communicated to defense counsel several months in advance of this motion." (ECF No. 36 at PageID.155.) Therefore, Saunders requests that the Court permit her to remove Dyck O'Neal's use of its manual dialer from contention in this case. Saunders' request will be granted. Local Rule 7.1(d) requires that, "[w]ith respect to all motions, the moving party shall ascertain whether the motion will be opposed." Dyck O'Neal apparently failed to consider Saunders' communication on this matter.

## Applicable Law

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The TCPA prohibits any person within the United States from "mak[ing] any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). "Voluminous consumer complaints about abuses of telephone technology . . . prompted Congress to pass the TCPA. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls. The Act bans certain practices invasive of privacy." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370–71, 132 S. Ct. 740, 744 (2012). "The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls . . . [therefore,] it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013) (internal citations omitted); *see also Inge v. Rock Fin. Corp.*, 281 F.3d 613, 621 (6th Cir. 2002) ("As a remedial statute, we **must** construe [the Truth in Lending Act's] terms liberally in favor of consumers." (emphasis added)).

## Background

Federal Home Loan Mortgage Corporation assigned Dyck O'Neal all of its right, title, and interest to outstanding debt that Saunders and her then-husband owed on a piece of property. Dyck O'Neal then began to contact Saunders in an attempt to collect the debt. In addition to calls, Dyck

O'Neal left approximately thirty automated voicemail messages on Saunders' phone over a one-year period—each time, Saunders would receive a notification on her phone that she had a new voicemail.

Dyck O'Neal contracts with VoApp, a third-party vendor, to deliver messages to individuals' voicemails using VoApp's "DirectDROP" voicemail service. Rather than call the target's phone number and wait to reach the target's voicemail, VoApp utilizes technology to reach the target's voicemail through a back door. Specifically, VoApp's Adaptive Signaling technology "causes the mobile switch to make a call to a phone number assigned to the voicemail service provider's enhanced service platform (i.e. the voicemail computer or server), not the consumer's phone number." (ECF No. 27 at PageID.97.) By routing the message through the voicemail server itself, VoApp is able to deliver a voicemail message to the server space associated with the consumer[2]—the consumer then receives a notification that she received a new voicemail message, but without having received a traditional call.

Dyck O'Neal provides three things to VoApp in order for VoApp to make its direct drop voicemail messages: (1) the target's phone numbers; (2) the caller ID number to be displayed on the target's voicemail screen; and (3) the prerecorded message to record into the target's voicemail box. VoApp then makes the respective "calls" on a repeated basis, and targeted consumers begin to receive notifications that they have a new voicemail message each time VoApp does so. The target must then take steps to listen to the voicemail and delete it.

<u>Discussion</u>

This is a case of first impression. The parties dispute whether Dyck O'Neal's direct-to-voicemail messages—by VoApp—qualify as a "call" under § 227(b)(1)(A)(iii) of the TCPA. If

---

[2] Voicemail messages are not stored on individuals' physical phones, but rather in a data center often managed by the cellphone carrier.

the messages are a "call," then Dyck O'Neal's motion must be denied as a matter of law—and vice versa.

Courts have consistently held that voicemail messages are subject to the same TCPA restrictions as traditional calls.[3] *See, e.g.*, *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012) (awarding statutory damages for all calls received, including voicemails); *Powell v. West Asset Mgmt. Inc.*, 773 F. Supp. 2d 761 (N.D. Ill. 2011) (concluding that unanswered calls and accompanying voicemail messages were violations of the TCPA); *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 720 (S.D.N.Y. 2013) (holding that it was immaterial whether the plaintiff answered the defendants' calls or whether the calls went to voicemail). The same can be said for text messages—the Supreme Court observed that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016). Neither party has offered, and the Court is unaware of, a case in which a court addressed whether direct-to-voicemail, or direct drop voicemails, are within the compass of § 227(b)(1)(A)(iii).[4]

The Ninth Circuit considered whether a "call" includes both voice and text messages, provided that the call is made "to any telephone number," as required by the statute, in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009). The court analyzed the "to make any call" language, and looked to the "ordinary, contemporary, and common meaning of the verb 'to call.'" The court found that "call" in this context meant "to communicate with or try to get into communication with a person by a telephone," and noted that text messaging was not available

---

[3] Dyck O'Neal argues that because voicemail is an "information or enhanced service," as opposed to a "telecommunications service," it is not regulated under § 227(b)(1)(A)(iii), according to 47 C.F.R. § 64.702(a). Dyck O'Neal conflates the issues and attempts to blur the law. Voicemail may be regulated generally as an information service—but if voicemails are connected to a "call," as in the cited cases, they can be considered under § 227(b)(1)(A)(iii).

[4] The issue of "ringless voicemails" was presented in *Mahoney v. TT of Pine Ridge*, No. 9:17-CV-80029 (S.D. Fl. 2017), however the parties settled the case before the court addressed the issue.

when the law was enacted in 1991.  *Id.* at 953–54.  Citing the statutory purpose of the TCPA, *i.e.*, to protect the privacy interests of individuals from the nuisance and invasion of privacy by automated telephone calls, the court held "that a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Id.* at 954; *see also Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015) ("It is clear that Congress did not address, or even intend to address, the treatment of text messages when considering and passing the TCPA . . . . We thus **unhesitatingly** afford deference to the [FCC] holding that a text message should be treated as a 'call' for purposes of the TCPA." (emphasis added)).

Saunders also points out Congress' use of the broad descriptor "any" in regulating "any call."  In *Pinchem v. Regal Medical Group, Inc.*, 228 F. Supp. 3d 992, 997 (C.D. Cal. 2017), the court cited the dictionary definition of "any" as "unmeasured or unlimited in amount, number, or extent; appreciably large or extended."  The court accordingly concluded that a fax transmission to a phone, containing data rather than spoken word, is nevertheless "intended to express a message to the recipient through a telephone line," and is a "call" under the TCPA.  *Id.*

The FCC similarly construed the TCPA broadly in determining that sending a text message to a consumer by email or web browser fell under the purview of the TCPA.  The FCC stated, "[t]he TCPA's text and legislative history reveal Congress's intent to give the Commission broad authority to enforce the protections from unwanted robocalls as **new technologies emerge**. We therefore believe Congress intended the word 'dial'[5] to mean initiating a communication with consumers through use of their telephone number by an automated means that does not require direct human intervention." *FCC 2015 Ruling*, 30 F.C.C. Rcd. 7961, at ¶¶ 113–15 (2015)

---

[5] At issue was whether a system qualified as an "automatic telephone dialing system" under the TCPA.  The FCC was considering the definition of "dial" because the statute defines "automatic telephone dialing system" as equipment that can store or produce telephone numbers to be called and can *dial* those numbers.  47 U.S.C. § 227(a)(1).

5

(emphasis added), *decision set aside in part by ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). The FCC concluded, "[f]inding otherwise—that merely adding a domain to the telephone number means the number has not been 'dialed'—when the effect on the recipient is identical, would elevate form over substance, thwart Congressional intent that evolving technologies not deprive mobile consumers of the TCPA's protections, and potentially open a floodgate of unwanted text messages to wireless consumers." *Id.* at ¶ 115.

Dyck O'Neal emphasizes that it did not dial Saunders' cellular telephone number. Instead, Dyck O'Neal "deposit[ed] a voicemail message directly on a voicemail service"—an action it insists is unregulated. "To do this, VoApp's patented Adapt-Sig technology created and transmitted a series of network signaling events into the network. Once a connection was established, the voice message was then played into the voice mail box from VoApp's server without ever placing a call to Plaintiff's mobile handset." (ECF No. 48 at PageID.492.)

Dyck O'Neal's use of direct to voicemail technology is a "call" and falls within the purview of the TCPA. As a remedial statute, the Court construes the TCPA broadly in favor of Saunders. The statute itself casts a broad net—it regulates *any* call, and a "call" includes communication, or an attempt to communicate, via telephone. Both the FCC and the courts have recognized that the scope of the TCPA naturally evolves in parallel with telecommunications technology as it evolves, *e.g.*, with the advent of text messages and email-to-text messages or, as we have here, new technology to get into a consumer's voicemail box directly. The TCPA was enacted in 1991; the equivalent act at that time could be considered a party recording a message directly on an answering machine's cassette tape without ever calling the number—an infeasible technological feat absent physical access to a consumer's answering machine.

Saunders received the notifications of Dyck O'Neal's voicemails on her phone.  She listened to the voicemails on her phone.  Voicemails are intrinsically tied to cellular phones.  By leaving a voicemail directly in the server space associated with Saunders' phone, Dyck O'Neal was attempting to communicate with Saunders via her phone—which is the definition applied to the TCPA's use of "call."  Further, Dyck O'Neal's automated message instructed Saunders to call them at a specific phone number—inviting additional communication over the telephone.

The effect on Saunders is the same whether her phone rang with a call before the voicemail is left, or whether the voicemail is left directly in her voicemail box, *i.e.*, Saunders receives a notification on her phone that she has a new voicemail.  The effect on Saunders is also the same in receiving a text message—which would fall under the TCPA—each time, she received a notification on her phone that she had a new message, and had to take steps to review or delete the message.  In fact, voicemails are arguably more of a nuisance to consumers than text messages. To limit the TCPA to instances where Dyck O'Neal specifically dialed Saunders' phone number and then reached her voicemail, and exclude Dyck O'Neal's back door into Saunders' voicemail box, would be an absurd result.  The TCPA was created to limit the harassment and nuisance that automated calls and messages place on consumers—which is precisely what Saunders alleges Dyck O'Neal has done.  Dyck O'Neal cannot skirt the statute with VoApp's new technology.

Accordingly, Dyck O'Neal's direct-to-voicemail messages are a "call" under the TCPA, and Saunders' claim will proceed.  To hold otherwise "would elevate form over substance, thwart Congressional intent that evolving technologies not deprive mobile consumers of the TCPA's protections, and potentially open a floodgate of unwanted [voicemail] messages to wireless consumers."  30 F.C.C. Rcd. 7961 at ¶ 115.

## **<u>Conclusion</u>**

Therefore,

    **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 25) is **DENIED**.


Dated: July 16, 2018                                /s/ Gordon J. Quist        
                                           GORDON J. QUIST
                               UNITED STATES DISTRICT JUDGE