**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| Karen Saunders,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Dyck-O'Neal, Inc.,<br><br>　　　　Defendant. | Case No.: 1:17-cv-00335-GJQ-RSK<br>Hon. Judge Gordon J. Quist<br>Magistrate Judge Ray Kent<br><br>**ORAL ARGUMENT REQUESTED** |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR RECONSIDERATION OF OPINION AND ORDER DENYING SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR CERTIFICATION OF CONTROLLING ISSUES OF LAW FOR INTERLOCUTORY APPEAL**

Defendant Dyck-O'Neal, Inc. ("Dyck-O'Neal"), through its undersigned counsel, Varnum LLP, respectfully submits this brief in support of Dyck-O'Neal's motion for reconsideration of the Court's Opinion and Order denying Dyck-O'Neal's motion for summary judgment. Alternatively, Dyck-O'Neal requests certification of the controlling issues of law implicated by the Court's ruling for interlocutory appeal.

## I.　　INTRODUCTION

This case explores the reach of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (the "TCPA" or the "Act"), and requires this Court to determine, in a case of first impression, whether delivery of a message directly to the landline of a wireless service provider which bypasses the recipient's cell phone number and handset, altogether, and does not otherwise result in any charge to the recipient qualifies as a "call" subject to the prohibitions set forth in 47 U.S.C. § 227(b)(1)(A)(iii).

1

The TCPA was enacted in 1991 to protect consumer privacy by prohibiting unwanted telemarketing calls, autodialed or prerecorded calls, and unsolicited faxes. But technology has changed significantly since passage of the Act resulting in an outdated regulatory scheme that presents substantial risk and potentially ruinous liability for businesses across nearly every industry. Indeed, the technology at issue in this case was not in existence at the time the Act was passed and was specifically designed to deliver messages in a passive and non-intrusive manner.

Not surprisingly, the Federal Communications Commission ("FCC"), which is charged with implementing the Act, has struggled mightily to understand this rapidly evolving technological landscape, releasing a series of rules and declaratory rulings to clarify the TCPA's reach. Unfortunately, such efforts have added confusion, not clarity, to the regulatory landscape resulting in increased litigation and wildly conflicting case law, sometimes within the same jurisdiction or court.

The recent decision of *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018) ("ACA International") illustrates the problem. In *ACA International*, the D.C. Circuit was tasked with analyzing, *inter alia*, whether the FCC's expansive definition of the term "capacity", as enunciated in the Commission's 2015 Declaratory Ruling, could be squared with the Act's plain language defining an "automatic telephone dialing system" as equipment that "has the capacity" to "store or produce telephone numbers to be called, using a random or sequential number generator," and "to dial such numbers." 47 U.S.C. § 227(a)(1). In its 2015 Ruling, the FCC declined to define a device's "capacity" in a manner confined to its "present capacity." Instead, the FCC construed a device's "capacity" to encompass all of its "potential functionalities" including future modifications such as software changes. *ACA Int'l*, 885 F.3d 687, 693–94 (citations omitted). The resulting interpretation swept old, new and not yet developed technology under the purview of the

2

Act. The D.C. Court, in rejecting the FCC's expansive interpretation of the Act, concluded that the FCC went too far:

> "[T]here is no expectation that a statute's reach necessarily will precisely match Congress's findings about a problem it aims to address, and Congress might well fashion a statute's operative provisions with built-in flexibility to accommodate expansion of the concerns animating the legislation over time. But a several-fold gulf between congressional findings and a statute's suggested reach can call into doubt the permissibility of the interpretation in consideration."

*ACA Int'l*, 885 F.3d 687, 698 (C.A. D.C., 2018).

Here, the Court's Opinion and Order denying Dyck-O'Neal's motion for summary judgment (the "Order") ostensibly seeks to strike a similar balance between Congressional intent and evolving technologies as was posed to the D.C. Circuit in *ACA Int'l* but like the FCC's 2015 Ruling, the Order goes too far. The Order unilaterally broadens, and substantially so, the type of technology regulated under the TCPA at the expense of law-abiding companies committed to using new and evolving technologies to deliver messages in lieu of phone calls.

For the reasons that follow, Dyck-O'Neal respectfully submits that the Court's Order misapprehended the facts and controlling law resulting in palpable defect which, if corrected, will result in a different disposition of the case. Alternatively, the Court should certify the controlling issue in this case for immediate appeal.

## II.   PROCEDURAL POSTURE

On April 18, 2018, Dyck-O'Neal filed its motion for summary judgment. Dyck-O'Neal argued, *inter alia*, that the delivery of a voice message to a landline for Plaintiff's wireless service provider – not Plaintiff's telephone number – using VoAPPs' DirectDROP Voicemail technology does not implicate the TCPA because no "call" is made "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common

3

carrier service," nor does the delivery of such voicemail result in "the called party [being] charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).

On July 16, 2018, following briefing by both sides, the Court entered its Order denying Dyck-O'Neal's motion. In doing so, the Court concluded that use of direct to voicemail technology qualifies as a "call" within the purview of the TCPA because the purpose of delivering such a message is to invite communication with the recipient of the message. The Court did not rely on the Act's language or any FCC interpretation directly on point. The Court took a more simplistic view of the messages in this case reasoning that the practical "effect" of the messages was the same for a recipient regardless of how or where such messages were delivered and, therefore, determinative of the controlling legal issue presented in Dyck O'Neal's motion.

On September 11, 2018, the Court entered a Case Management Order establishing deadlines for the completion of discovery, class certification briefing and the filing of dispositive motions. These tasks were deferred pending the Court's Order on the controlling issue of law raised in Dyck-O'Neal's motion.

### III.   SUMMARY OF ARGUMENT

Before the Court and the parties expend further resources litigating the remaining issues this case, Dyck-O'Neal respectfully seeks reconsideration of the Court's Order or, in the alternative, certification of the controlling issues of law identified in the Order for interlocutory appeal. Careful review of the Order reveals that the case law and the technological analogs which buttressed the Court's ruling are distinguishable from the facts and law at issue in this case. Neither the plain language of the Act or a desire to uphold Congressional intent as "new technologies emerge" justifies expansion of the Act as provided for in the Order. Reconsideration of these issues will result in a different disposition of this case conserving substantial judicial resources.

4

Even if the Court is not persuaded that a different disposition is appropriate, the issues implicated in the Order undoubtedly involve controlling questions of law as to which there are substantial grounds for difference of opinion. By the Court's own admission, "this is a case of first impression" and no other court has "addressed whether direct-to-voicemail, or direct drop voicemails, are within the compass of 47 U.S.C. § 227(b)(1)(A)(iii)." An immediate appeal from the Order will materially advance the ultimate termination of this first-in-kind litigation and provide important clarification to the parties, this Court and interested parties within the Sixth Circuit and beyond.

### IV. ARGUMENT AND AUTHORITIES

#### A. The Court's Order Denying Dyck-O'Neal's Motion for Summary Judgment Misapprehended the Facts and Controlling Law and Should be Corrected

Dyck-O'Neal respectfully seeks reconsideration of the Court's Order. The standard of review to be employed by the Court when examining a motion for reconsideration is the "palpable defect" standard. W.D. Mich. L.R. 7.4(a). A "palpable defect" is a "defect which is obvious, clear, unmistakable, manifest, or plain." *Olson v. The Home Depot,* 321 F.Supp.2d 872, 874 (E.D. Mich. 2004). The movant must show that (1) the court and the parties have been misled by a "palpable defect," and (2) correcting the defect will result in a different disposition of the case. W.D. Mich. L.R. 7.4(a). A court should exercise discretion, and reconsider its prior ruling, "where the court has misapprehended the facts, a party's position or the controlling law." *Cactus Drilling Co., LLC v. Nat'l Union Fire Ins. Co of Pittsburgh, PA,* CIV-12-00191-M, 2014 WL 1338138, at *1 (W.D Okla. Apr. 2, 2014). Here, the Court's Order misapprehended the facts and controlling law resulting in palpable defect which, if corrected, will result in a different disposition of the case.

The TCPA prohibits the making of any "call" using "any automatic telephone dialing system" or "an artificial or prerecorded voice" to "any telephone number assigned to a paging

5

service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call unless the person gives prior consent or the call is made for emergency purposes." 47 U.S.C. § 227(b)(1)(A)(iii). In passing the TCPA, Congress directed the FCC to "prescribe regulations to implement the requirements of this subsection . . . ." 47 U.S.C. § 227(b)(2). The FCC has reaffirmed that there can be no liability under the TCPA unless a call is placed "[t]o any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 C.F.R. § 64.1200(a)(1)(iii).

Despite this statutory and regulatory backdrop, the Court concluded that because voicemails and text messages have been declared by other courts to be subject to the same TCPA restrictions as traditional calls, the TCPA should be expanded to include VoApps' direct-to-voicemail message technology because the "effect" of receiving a notification alerting one to the existence of a new voice mail stored on the phone provider's server is essentially the same for the recipient whether the phone rings or not. The problem, of course, is that the TCPA expressly regulates the type of technology which can be used to place calls to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier. The messages at issue here were not directed at or made to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier nor did they result in charges to the Plaintiff. Accordingly, the TCPA is not applicable to this case, as with traditional voice mail or text messages, because neither prong of 47 U.S.C. § 227(b)(1)(A)(iii) is triggered by the direct drop messages at the heart of this case.

Indeed, if the TCPA extended to all calls and pre-recorded messages without regard to whether a call was, in fact, placed to a "telephone number assigned to a paging service, cellular

telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call" to initiate such call or message, the TCPA would, by extension, reach calls made to landlines which are then forwarded to cellular phones. After all, the "effect" of receiving such a call is the same regardless of whether the call was initiated to a landline and then transferred to the recipient's cell phone. Yet, courts routinely reject such claims, and for good reason, because calls to landlines are not covered under the plain language of 47 U.S.C. § 227(b)(1)(A)(iii). See, *Harper v. Credit Control Services, Inc*., 863 F. Supp. 2d 125, 126 (D. Mass., 2012) (finding no TCPA liability where the calls at issue calls were made to a landline and then forwarded to plaintiff's cellular phone).

The same holds true for calls made to voice over Internet Protocol ("VoIP") numbers. Such numbers do not fall under the umbrella of a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service. Again, the "effect" of receiving a call made to a VoIP service is the same – the recipient can choose to answer the call, retrieve a message or do nothing at all. However, because VoIP calls are not placed to one of the "services" enumerated in 47 U.S.C. § 227(b)(1)(A)(iii), the TCPA is only applicable to such calls if the recipient is charged for the call. *Klein v. Commerce Energy, Inc*., 256 F.Supp.3d 563, 582 (W.D. Pa., 2017); *Baemmert v. Credit One Bank, N.A*., 271 F.Supp.3d 1043, 1049 (W.D. Wis., 2017).

It is true that the legislative history suggests the general intent of Congress in passing the TCPA was to protect consumer privacy by prohibiting unwanted telemarketing calls, autodialed or prerecorded calls, and unsolicited faxes. But legislative history cannot trump the clear words of a statute, particularly when the FCC has not issued any rules or declaratory rulings directly on point.

In *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012), the court concluded that voice mails left for a plaintiff were actionable under the TCPA because defendant made calls to a "cellular telephone service" as expressly required under 47 U.S.C. § 227(b)(1) to deliver the voice mails at issue. *Soppet* at 638 ("This suit arises from dozens of automated calls made to two cell numbers, which went to voicemail and thus consumed minutes from the subscribers' plans."). The decisions in *Powell* and *Castro* follow the same analysis. See, *Powell v. West Asset Management, Inc.*, 773 F. Supp. 2d 761, 763 (N.D. Ill., 2011) ("defendant called plaintiff on his cellular phone twenty-five times"); *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 720 (S.D. N.Y., 2013) ("Green Tree placed *at least* thirty-four calls to Plaintiffs' cellular phones using an auto dialer."). None of these decisions support the proposition that a voice message is actionable, per se, without regard to whether a call was, in fact, initiated to a service enumerated in 47 U.S.C. § 227(b)(1)(A)(iii) to deliver such message.

Cases holding that text messages are regulated by the TCPA are also distinguishable because the FCC has specifically determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A). *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009), In *Satterfield*, the Ninth Circuit reasoned that:

> While the TCPA does not define "call," the FCC has explicitly stated that the TCPA's prohibition on ATDSs "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls...." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003) (hereinafter "2003 Report and Order"). The FCC subsequently confirmed that the "prohibition on using automatic telephone dialing systems to make calls to wireless phone numbers applies to text messages (e.g., phone-to-phone SMS), as well as voice calls." *In the Matter of Rules and Regulations Implementing the Controlling the Assault of Non–Solicited Pornography and Marketing Act of 2003; Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 19 FCC Rcd. 15927, 15934 (FCC August 12, 2004). In the Notice of Proposed

8

> Rulemaking of the CANSPAM Act, the FCC also noted "that the TCPA and Commission rules that specifically prohibit using automatic telephone dialing systems to call wireless numbers already apply to any type of call, including both voice and text calls." *Id.* at 15933. Therefore, the FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A).

*Satterfield*, 569 F.3d 946, 952 (9th Cir. 2009)

Significantly, the *Satterfield* Court did not unilaterally decide to expand the plain language of the Act in hopes of matching Congressional intent. Rather, the *Satterfield* Court applied Chevron deference to the FCC's ruling. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 104 S. Ct. 2778, 2779 (1984). Here, the FCC has not provided rules or declaratory guidance regarding whether the direct drop voicemail technology at issue in this case is subject to the TCPA. Accordingly, the Court must apply the Act as written.

Simply put, delivering a message to a landline assigned to a phone carrier which can then be accessed by a phone subscriber at a later time using his or her phone, does not and cannot transform such a message into a "call" made to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier. Because Plaintiff did not and cannot establish that she was charged for the messages under the "charge" prong of § 227(b)(1)(A), either, the Court's determination that the messages at issue qualify as "calls" which fall under the purview of the TCPA constitutes palpable defect. Indeed, the Court's Order, which drastically expands the reach of the TCPA finds no support in either the clear words of the statute, any regulatory pronouncement by the FCC or the cases cited in support of the Court's Order.

These "palpable defects" informed the Court's decision and, if corrected, will result in a different disposition of the case. Accordingly, Dyck-O'Neal respectfully seeks reconsideration of the Order.

**B.     The Court Should, In the Alternative, Certify the Issues Raised in the Order For Immediate Interlocutory Appeal**

As set forth above, the case law and the technological analogs underlying the Court's ruling are distinguishable from the facts and law at issue in this case. The Court's Order, which drastically expands the reach of the TCPA in a material and completely unprecedented way, cannot be squared with the plain language of the Act, regulatory guidance or case law and presents a "several-fold gulf" between congressional findings and the TCPA's logical reach.

Even if the Court is not persuaded that a different disposition is appropriate, the issues implicated in the Order involve controlling questions of law as to which there are substantial grounds for difference of opinion. An immediate appeal from the Order will materially advance the ultimate termination of this first-in-kind litigation and provide important clarification to the parties, this Court and interested parties within the Sixth Circuit and beyond. Because the parties, the Court and district courts within this Circuit and beyond will benefit from appellate guidance on these issues, Dyck-O'Neal respectfully requests that the Court certify the following question:

> For purposes of the Telephone Consumer Protection Act, does delivery of a message directly to the landline of a wireless service provider which bypasses the recipient's cell phone number and handset, altogether, and does not otherwise result in any charge to the recipient qualifies as a "call" subject to the prohibitions set forth in 47 U.S.C. § 227(b)(1)(A)(iii)?

Correct and timely resolution of this important, case-dispositive question is critical and will allow this case to be efficiently resolved as contemplated by the federal rules. Furthermore, the legal grounds upon which the Order is based will undoubtedly trigger widespread, conflicting litigation in federal district courts nationwide weigh also weighs in favor of an immediate appeal.

Motions seeking certification of a court order for immediate appeal are governed by 28 U.S.C. § 1292(b):

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided*, however, that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b).

This Court may certify an order for interlocutory appeal if three requirements are satisfied: (1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). *In re Memphis*, 293 F.3d 345, 350 (6th Cir. 2002), citing *Cardwell v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444, 446 (6th Cir.1974).

The first and the third requirements are closely tied. *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 878 (E.D. Mich. 2012). A question of law is "controlling" if "interlocutory reversal might save time for the district court, and time and expense for the litigants," *Johnson v Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991), and the ultimate termination of litigation" is materially advanced if immediate appeal would "save[] judicial resources and litigant expense," *Deutsche Bank Nat'l Trust Co. v. Weickert*, 638 F. Supp. 2d 826, 831 (N.D. Ohio 2009).

Here, the first and third requirements for interlocutory review – that the order to be certified involve a "controlling question of law" which will materially advance the litigation – are both satisfied. The Sixth Circuit has said that "[a] legal issue is controlling if it could materially affect the outcome of the case." *In re Memphis, supra*, at 350. Notably, "resolution of the issue need not terminate the case." *Hurley v. Deutsche Bank Trust Co. Americas*, 2009 WL 1067314, at *3 (W.D.

11

Mich. Apr. 21, 2009), citing *In re Baker & Getty Fin. Servs.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992); *In re Fascella Enters., Inc.*, 2008 WL 4155676, at *2 (E.D. Pa. Sept.10, 2008) ("The issue need not be one that would terminate the litigation, nor need it be determinative of the claims on their merits."). However, resolution of such issues must advance the case in a material and meaningful way. This threshold is met in this instance.

Whether delivery of a message directly to the landline of a wireless service provider which bypasses the recipient's cell phone number and handset, altogether, and does not otherwise result in any charge to the recipient qualifies as a "call" subject to the prohibitions set forth in 47 U.S.C. § 227(b)(1)(A)(iii) is a question of law that controls the outcome of this case. The answer to this question will determine whether Plaintiff's claims, which arise solely under the TCPA, are properly before this Court. If the messages at issue do not implicate the TCPA, this litigation will be terminated or substantially altered.

Absent immediate review of this controlling question of law, the parties will be forced to resume costly and time-consuming discovery and undertake class certification briefing, dispositive motion practice and possibly trial. In the meantime, companies will not be able to use the technology at issue without risk of ruinous liability, despite the fact that no congressional, regulatory or precedential authority expressly places direct drop voicemail within the four corners of the TCPA. Requiring the parties to proceed down this path is not a meaningful or efficient exercise. Thus, the first and third elements undoubtedly weigh in favor of certification.

There are also substantial grounds for a difference of opinion regarding the propriety of the Court's Order. Substantial grounds for differences of opinion exist when (1) the issue is difficult and of first impression; (2) a difference of opinion exists within the controlling circuit; or (3) the circuits are split on the issue." *West Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City*

*of Memphis*, 138 F.Supp.2d 1015, 1019 (W.D. Tenn. 2000); *Eagan v. CSX Transp., Inc.*, 294 F. Supp. 2d 911, 916 (E.D. Mich. 2003).

As the Court and the parties have readily acknowledged, "this is a case of first impression" and no other court has "addressed whether direct-to-voicemail, or direct drop voicemails, are within the compass of 47 U.S.C. § 227(b)(1)(A)(iii)." Despite this dearth of authority, the Court's Order drastically expands the reach of the TCPA under the auspices of congressional intent despite the fact that no definitive statutory or regulatory basis exists to apply the Act's prohibitions to the technology at issue.

Although the Court characterizes the message drop technology used in this case as a "back door into [Plaintiff's] voicemail box," direct drop messaging avoids the specific harm that the TCPA was designed to prevent – the scourge of repeated, dropped or dead air calls. The Act was not designed to prevent companies from using new and evolving technology to transmit messages in a passive, unobtrusive manner. Such messages allow recipients the freedom to dial into their carrier's voicemail service platform to retrieve a message or not, as and when they see fit, without incurring any charges. The issues raised in this case are novel, complex and subject to a good faith difference of opinion regarding the scope and applicability of the TCPA to the specific technology at issue. Thus, the second and final factor also weighs in favor of certification for immediate review by the Sixth Circuit.

In sum, the controlling question of law in this action presents a difficult question of first impression and substantial grounds exist for reasonable minds to disagree. Dyck O'Neal has presented several compelling reasons why the Order conflicts with the clear language of the TCPA and why the facts of this case and the technology at issue are distinguishable from traditional voice and text messages which do fall within the purview of the Act. To proceed with protracted, costly

and potentially ruinous litigation of a case which will inevitably land before the Sixth Circuit given the stakes for both sides does not promote judicial economy. For all of these reasons, Dyck O'Neal respectfully requests that the Court certify the controlling question of law presented in this proceeding for immediate appeal.

## V.     CONCLUSION AND REQUESTED RELIEF

For all of these reasons, Dyck-O'Neal respectfully requests that the Court grant Dyck-O'Neal's request for reconsideration of the Court's Order denying Dyck-O'Neal's motion for summary judgment. Alternatively, Dyck-O'Neal requests that the Court certify the controlling issue of law regarding the applicability of the TCPA to the claims in this case for interlocutory appeal.

Dated: October 3, 2018                                    Respectfully Submitted,

**VARNUM LLP**

/s/ Charity A. Olson
Charity A. Olson
300 N. 5th Ave., Suite 230
Ann Arbor, Michigan 48104
Tel: (734) 372-2914
Fax: (734) 372-2940
caolson@varnumlaw.com

## CERTIFICATE OF SERVICE

I, Charity A. Olson, hereby state that on October 3, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

Dated: October 3, 2018                    Respectfully Submitted,

**VARNUM LLP**

/s/ Charity A. Olson
Charity A. Olson
300 N. 5th Ave., Suite 230
Ann Arbor, Michigan 48104
Tel: (734) 372-2914
Fax: (734) 372-2940
caolson@varnumlaw.com