UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Karen Saunders,<br><br>    Plaintiff,<br><br>v.<br><br>Dyck-O'Neal, Inc.,<br><br>    Defendant. | Case No.: 1:17-cv-00335-GJQ-RSK<br>Hon. Judge Gordon J. Quist<br>Magistrate Judge Ray Kent |

**DEFENDANT'S UNOPPOSED MOTION FOR LEAVE TO FILE THIRD-PARTY COMPLAINT**

Defendant Dyck-O'Neal, Inc. ("Dyck-O'Neal"), through its undersigned counsel, Varnum, LLP, and pursuant to Fed. R. Civ. P. 14(a), hereby moves for leave to file a third-party complaint, and states as follows:

**I. Introduction**

On April 12, 2017, Plaintiff Karen Saunders ("Plaintiff") filed a lawsuit against Dyck-O'Neal alleging that Dyck-O'Neal violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The Complaint alleges that Dyck-O'Neal initiated calls to and left pre-recorded messages on Plaintiff's cell phone without her consent.

On June 19, 2017, Dyck-O'Neal filed its answer and affirmative defenses denying any liability to Plaintiff under the TCPA. (DE # 6). Dyck-O'Neal also asserted, *inter alia*, as one of its affirmative defenses that any damages incurred by Plaintiff "were caused by the acts and/or omissions of persons or entities over whom [Dyck-O'Neal] had no control or authority." *Id*., at ¶ 6. Further investigation and discovery revealed that the phone calls initiated by Dyck-O'Neal were not made using an "automatic telephone dialing system" as defined in the TCPA and, thus, Plaintiff's only challenge pertains to the voice mails that were delivered in this case.

Notably, all of the voicemails at issue in this case were delivered using VoApps, Inc.'s direct to voice mail technology ("VoApps' DirectDrop Service"). Such messages were delivered pursuant to an agreement entered into between Dyck-O'Neal and VoApps. VoApps made various representations to induce Dyck-O'Neal to enter into the agreement including, but not limited to, representing to Dyck-O'Neal, verbally and in writing, that VoApps' DirectDrop Service was fully compliant with existing law and that the messages delivered using VoApps' DirectDrop Service did not qualify as calls to a cellular phone and, therefore, such messages were not regulated communications under the TCPA.

While Dyck-O'Neal expressly denies liability to Plaintiff, if Dyck-O'Neal is held liable for Plaintiff's claims, any liability would be the direct and proximate result of using VoApps' DirectDrop Service in direct reliance on VoApps' representations that VoApps' DirectDrop Service was compliant with existing law, that messages delivered using VoApps' DirectDrop Service do not constitute calls to a cellular phone and that messages delivered using VoApps' DirectDrop Service are not regulated communications under the TCPA. Dyck-O'Neal is additionally incurring fees and costs in connection with defending Plaintiff's claims, the exact amount of which is unknown at this time.

Because Dyck-O'Neal's claims against VoApps are so directly related to plaintiff's claims that they form part of the same case or controversy, the Court should grant Dyck-O'Neal motion and allow Dyck-O'Neal to file its proposed third-party complaint against VoApps, attached hereto as Exhibit B, in this matter rather than require Dyck-O'Neal to file its claims against VoApps in a separate action.

**II.     Statement of Facts**

On or about March 28, 2016, Dyck-O'Neal entered into a Master Service Agreement with VoApps (the "VoApps Agreement") to provide VoApps' DirectDrop Service(s). Exhibit A: Voapps Agreement. The VoApps Agreement expressly represented and warranted, *inter alia*, that VoApps' DirectDrop Service is "compliant [with] current law". Exh. A, ¶ 6. VoApps also expressly represented and warranted that its "**DirectDrop Voicemail service does not make a voice call to a cellular phone and therefor [sic] is not a regulated communication under the Telephone Consumer Protection Act**." See Exh. A, ¶ 17 (emphasis added).

Dyck-O'Neal relied upon these and other representations made by VoApps, entered into the VoApps' Agreement and used VoApps' DirectDrop Service to deliver voice mail messages to Plaintiff's phone provider on or about May 4, 2016 and at various times thereafter for retrieval by Plaintiff. Dyck-O'Neal also used VoApps' DirectDrop Service to deliver voice messages to other persons as provided for in the VoApps' Agreement.

The VoApps Agreement specifically provided that the parties would "FULLY INDEMNIFY AND HOLD THE OTHER PARTY AND ITS SUBSIDIARIES, AFFILIATES, OFFICERS, AGENTS, CO-BRANDERS OR OTHER PARTNERS, AND EMPLOYEES, FOR ANY CLAIM OR DEMAND, INCLUDING REASONABLE ATTORNEY'S FEES, MADE BY ANY THIRD PARTY, SUCH AS PLAINTIFF, DUE TO THE INDEMNIFYING PARTY'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR VIOLATION OF ANY INTELLECTUAL PROPERTY RIGHTS OF ANOTHER." See Exh. A, ¶ 16.

On July 16, 2018, this Court entered an Opinion and Order denying Dyck-O'Neal's motion for summary judgment holding, *inter alia*, that messages delivered using VoApps' DirectDrop Service are, in fact, "calls" and fall within the purview of the Telephone Consumer Protection Act.

Although the Court has not made a final determination as to liability or certification of Plaintiff's proposed class, *if* Dyck-O'Neal is held to be liable to Plaintiff or members of the putative class under the TCPA for delivery of messages to Plaintiff and the putative class using VoApps' DirectDrop Service, such fees, costs and any corresponding award of damages are the direct and proximate result of VoApps' representations and warranties regarding use of VoApps' DirectDrop Service. Accordingly, Dyck-O'Neal moves for leave to file a third-party complaint against VoApps, attached hereto as Exhibit B, seeking indemnification by VoApps for all costs and reasonable attorney's fees incurred defending against Plaintiff's action and for any sums for which Dyck-O'Neal is found liable as a result of the delivery of any messages to Plaintiff and/or the putative class using VoApps' DirectDrop Service.

### III.     Law and Argument

The Federal Rules of Civil Procedure provide as follows:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

Fed. R. Civ. P. 14(a)(1). "The decision of whether to grant a motion for leave to implead is a matter committed to the discretion of the district court, and the exercise of discretion is essentially a process of balancing the prejudices." The Sixth Circuit has stated that the promptness of a motion for leave to implead a third-party is "an urgent factor" guiding a court's exercise of discretion. Gen. Elec. Co. v. Irvin, 274 F.2d 175, 178 (6th Cir. 1960). Other factors include: (i) the motion's timeliness; (ii) the likelihood of trial delay; (iii) potential for complication of issues; and (iv) prejudice to the original plaintiff. Botkin v. Tokio Marine & Nichido Fire Ins. Co., Ltd., 956 F.Supp.2d 795, 802 (E.D. Ky. 2013).

"The purpose of Rule 14 is to permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co., 512 F.3d 800, 805 (6th Cir. 2008) (citations omitted). The Sixth Circuit has explained as follows:

> Third-party pleading is appropriate only when the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded. A defendant attempting to transfer the liability asserted against him by the original plaintiff to the third-party defendant is therefore the essential criterion of a third-party claim. Correlatively, a defendant's claim against a third-party defendant cannot simply be an independent or related claim, but must be based upon the original plaintiff's claim against the defendant.

Id. Thus, the underlying purpose of Rule 14 is "'to promote economy by avoiding the situation where a defendant has been adjudicated liable and then must bring a totally new action against a third party who may be liable to him for all or part of the original plaintiff's claim against him.'" Id. (quoting 6 Wright, Miller, Kane, Fed. Prac. & Proc.: Civ.2d § 1441 at 289–90 (2d ed.1990)).

Plaintiff's claims against Dyck-O'Neal for violations of the TCPA are premised on Dyck-O'Neal's use of VoApps' DirectDrop Service to deliver messages intended for Plaintiff. However, Dyck-O'Neal would not have entered into the VoApps Agreement or utilized VoApps' DirectDrop Service to deliver messages to Plaintiff and the putative class members' mobile service providers but for VoApps' representations and warranties to Dyck-O'Neal that VoApps' DirectDrop Service was compliant with existing law, that messages delivered using VoApps' DirectDrop Service do not constitute calls to a cellular phone and that messages delivered using VoApps' DirectDrop Service are not regulated communications under the TCPA. If VoApps' DirectDrop Service is not compliant with existing law and the messages delivered using VoApps'

DirectDrop Service are regulated communications subject to the TCPA, VoApps' representations to the contrary are false and VoApps is liable to Dyck-O'Neal for all costs and reasonable attorney's fees incurred defending against Plaintiff's action and for any sums for which Dyck-O'Neal is found liable as a result of the delivery of messages to Plaintiff and/or the putative class using VoApps' DirectDrop Service. Accordingly, the Court should grant Dyck-O'Neal's motion and allow the filing of Dyck-O'Neal's third-party complaint against VoApps.

### A. Dyck-O'Neal's Request to File its Third-Party Complaint Is Timely and Proper

As an initial matter, Dyck-O'Neal's request to join VoApps is timely under the Scheduling Order. The Case Management Order ("CMO") entered by the Court on September 11, 2018 provides that motions to join parties or amend the pleadings shall be filed on or before October 31, 2018. (DE #54). It would have been premature and potentially unnecessary to seek to join VoApps prior to the Court's ruling on Dyck O'Neal's motion for summary judgment. On the heels of the Court's Order and recent entry of the CMO, it makes sense to join VoApps to this action now.

Second, there is no likelihood that trial will be delayed in this matter if VoApps is added as a third-party defendant. Indeed, VoApps has actively participated in third-party discovery since the inception of this case. VoApps has produced documents to Plaintiff in response to various subpoenas seeking information regarding VoApps' DirectDrop Service and the messages at issue. Plaintiff has also completed the depositions of VoApps' President, Paul Gies, and its Director of Engineering, Erick Schmitt.

Third, adding VoApps to the case now will not complicate the issues in this matter. Whether the messages delivered using VoApps' DirectDrop Service constitute calls regulated under the TCPA is the central issue in this case. VoApps' representations and warranties regarding use of VoApps' Direct Drop Service are set forth in the VoApps' Agreement. The messages at

issue in this case were all delivered pursuant to the VoApps' Agreement. Thus, adding VoApps to this matter will not create confusion or delay and will, in fact, streamline all of the claims in a single proceeding involving common proofs.

Lastly, there is no discernable prejudice to Plaintiff in joining VoApps. Indeed, Plaintiff does not oppose Dyck-O'Neal's request to join VoApps in this proceeding. As noted above, VoApps has been actively involved in discovery in this matter. Both Plaintiff and VoApps' counsel are well aware of the factual and legal grounds upon which Dyck-O'Neal seeks to add VoApps. The current CMO provides ample time to join VoApps and for resolution of the issues as between Dyck-O'Neal and VoApps which will be largely dictated by the outcome of Plaintiff's claims.

**B. Dyck-O'Neal's Claims against VoApps and Plaintiff's Claims against Dyck-O'Neal's are Part of the Same Case and Controversy and Should be Tried Together**

As stated previously, Federal Rule of Civil Procedure 14(a) states, "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Here, Dyck-O'Neal has viable misrepresentation and indemnification claims against VoApps, which are part of the same case and controversy as Plaintiff's claims against Dyck-O'Neal.

In this case, Plaintiff's claims rely on her allegation that Dyck-O'Neal left pre-recorded messages for her without prior express consent in violation of the TCPA. However, VoApps expressly represented and warranted to Dyck-O'Neal that VoApps' DirectDrop Service was fully compliant with existing law and direct to voicemail messages delivered using VoApps DirectDrop Service were not "calls" regulated under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *If* the fact finder concludes that VoApps' DirectDrop Service is not compliant with existing law and that the messages delivered using VoApps' DirectDrop Service constitute calls regulated communications subject to the TCPA, VoApps' innocently or fraudulently misled Dyck-

O'Neal regarding VoApps' DirectDrop Service and VoApps should be liable for any resulting damage suffered by Plaintiff. And, pursuant to the VoApps' Agreement, VoApps must pay for all costs and reasonable attorney's fees incurred defending against Plaintiff's action and for any sums for which Dyck-O'Neal is found liable as a result of the delivery of messages to Plaintiff and/or the putative class using VoApps' DirectDrop Service.

Accordingly, although Dyck-O'Neal denies any liability to Plaintiff in the above-entitled action, to the extent that Plaintiff or the putative class recover any amount against Dyck-O'Neal, VoApps will be liable to Dyck-O'Neal for all such amounts. To be sure, VoApps' liability to Dyck-O'Neal will turn on the same set of facts that are at issue in Plaintiff's case against Dyck-O'Neal. Granting Dyck-O'Neal's motion will serve judicial economy and avoid duplicative actions.

### IV.    Conclusion

WHEREFORE, Dyck-O'Neal, Inc. requests that the Court enter judgment in its favor and against third-party defendant, VoApps, Inc., for damages incurred by Dyck-O'Neal, including the amount of any judgment entered in favor of Plaintiff in this action, all of Dyck-O'Neal's attorney's fees and costs incurred in defending against Plaintiff's suit and in bringing this third-party complaint, and any further relief this Court deems proper.

Respectfully submitted,

VARNUM LLP
Attorney for Defendant

Dated: October 31, 2018            By:   /s/ Charity A. Olson
                                         Charity A. Olson (P68295)
                                         300 N. 5th Avenue, Suite 230
                                         Ann Arbor, MI 48104
                                         Telephone: (734) 372-2900
                                         caolson@varnumlaw.com

## CERTIFICATE OF SERVICE

I, Charity A. Olson, hereby state that on October 31, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

Dated: October 31, 2018                                             Respectfully Submitted,

**VARNUM LLP**

/s/ Charity A. Olson
Charity A. Olson
300 N. 5th Ave., Suite 230
Ann Arbor, Michigan 48104
Tel: (734) 372-2914
Fax: (734) 372-2940
caolson@varnumlaw.com