UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Karen Saunders,<br><br>    Plaintiff,<br><br>v.<br><br>Dyck-O'Neal, Inc.,<br><br>    Defendant and Third-Party Plaintiff,<br><br>v.<br><br>VoApps, Inc.,<br><br>    Third-Party Defendant. | Case No.: 1:17-cv-00335-GJQ-RSK<br>Hon. Judge Gordon J. Quist<br>Magistrate Judge Ray Kent |

## [PROPOSED] THIRD-PARTY COMPLAINT

Defendant and third-party plaintiff, Dyck-O'Neal, Inc. ("Dyck-O'Neal"), through its undersigned counsel, Varnum, LLP, hereby files this third-party complaint against third-party defendant, VoApps, Inc. ("VoApps"), and states:

## INTRODUCTION

1. This action arises out of VoApps' provision of direct to voicemail technology services ("VoApps' DirectDrop Service") to Dyck-O'Neal for delivery to certain recipients including, but not limited to, Plaintiff Karen Saunders.

2. Dyck-O'Neal entered into a Master Service Agreement with VoApps (the "VoApps Agreement") to provide VoApps' DirectDrop Service to Dyck-O'Neal.

3. VoApps made various representations to induce Dyck-O'Neal to enter into the VoApps Agreement including, but not limited to, representing to Dyck-O'Neal verbally and in writing that VoApps' DirectDrop Service was fully compliant with existing law and direct to

voicemail messages delivered using VoApps DirectDrop Service did not qualify as calls to a cellular phone and, therefore, such messages were not regulated communications under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4.     On or about May 4, 2016, and at various times thereafter, Dyck-O'Neal utilized VoApps' DirectDrop Service to deliver messages to Plaintiff's mobile service provider for subsequent retrieval by Plaintiff.

5.     On or about April 12, 2017, Plaintiff filed a lawsuit against Dyck-O'Neal alleging violations of the TCPA stemming from Plaintiff's receipt of messages utilizing VoApps' DirectDrop Service.

6.     Dyck-O'Neal has denied and continues to deny that it has any fault or is liable to Plaintiff or the proposed class in any amount.

7.     On July 16, 2018, and contrary to VoApps' representations, this Court entered an Opinion and Order denying Dyck-O'Neal's motion for summary judgment holding, *inter alia*, that VoApps' DirectDrop Service is a "call" and falls within the purview of the Telephone Consumer Protection Act.

8.     In the event Dyck-O'Neal is held liable to Plaintiff or members of the putative class for use of VoApps' DirectDrop Service, VoApps' actions subject it to liability for innocent and/or fraudulent misrepresentation. Further, VoApps is required to indemnify Dyck-O'Neal for any claims or demands, including reasonable attorney's fees, made by any third party, such as Plaintiff.

9.     Accordingly, Dyck-O'Neal seeks damages and indemnification from VoApps for any damages suffered as a result of VoApps' provision of DirectDrop Service(s) to Plaintiff or members of Plaintiff's putative class.

## PARTIES

10. VoApps is a Delaware corporation that regularly does business in the Western District Michigan and elsewhere.

11. Dyck-O'Neal is a Texas corporation with its principal place of business at 6060 North Central Expressway, Suite 200, Dallas, Texas 75206.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the claims asserted by Plaintiff against Dyck-O'Neal pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise pursuant to 47 U.S.C. § 227.

13. This Court has jurisdiction over Dyck-O'Neal's claims against VoApps pursuant to 28 U.S.C. § 1367 because such claims are so related to Plaintiff's claims against Dyck-O'Neal that they form part of the same case or controversy under Art. III of the U.S. Constitution.

14. In the alternative, this Court has jurisdiction over Dyck-O'Neal's claims against VoApps pursuant to 28 U.S.C. § 1332 because Dyck-O'Neal is a Texas corporation with its principal place of business in Texas. VoApps is a Delaware corporation with its principal place of business in Georgia. Therefore, complete diversity of citizenship exists. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

15. Venue in the Western District of Michigan is proper pursuant to 28 U.S.C. § 1391 because VoApps does business in this District and a substantial part of the events or omissions on which the claims asserted herein are based occurred in this District.

## STATEMENT OF FACTS

16. On or about March 28, 2016, Dyck-O'Neal entered into a Master Service Agreement with VoApps (the "VoApps Agreement") to provide VoApps' DirectDrop Service(s). Exhibit A: Voapps Agreement.

17. The VoApps Agreement expressly represented and warranted, *inter alia*, that VoApps' DirectDrop Service is "compliant [with] current law". Exh. A, ¶ 6.

18. VoApps also expressly represented and warranted that its "**DirectDrop Voicemail service does not make a voice call to a cellular phone and therefor [sic] is not a regulated communication under the Telephone Consumer Protection Act**." See Exh. A, ¶ 17 (emphasis added).

19. The aforementioned representations made by VoApps to Dyck-O'Neal were material.

20. Dyck-O'Neal Dyck-O'Neal reasonably relied upon these and other representations, entered into the VoApps' Agreement and used VoApps' DirectDrop Service to deliver voice mail messages to Plaintiff and the putative class members' mobile service provider(s) for retrieval by Plaintiff and members of the putative class.

21. VoApps knew or reasonably should have known that Dyck-O'Neal would utilize VoApps' Direct Drop Services to leave voice mail messages for retrieval by Plaintiff and members of the putative class.

22. Dyck-O'Neal reasonably relied upon VoApps' representations that VoApps' DirectDrop Service was compliant with existing law, that messages delivered using VoApps' DirectDrop Service do not constitute calls to a cellular phone and that messages delivered using VoApps' DirectDrop Service are not regulated communications under the TCPA.

23. Dyck-O'Neal would not have entered into the VoApps Agreement or utilized VoApps' DirectDrop Service to deliver messages to Plaintiff and the putative class members' mobile service providers had VoApps not represented to Dyck-O'Neal that VoApps' DirectDrop Service was compliant with existing law, that messages delivered using VoApps' DirectDrop

Service do not constitute calls to a cellular phone and that messages delivered using VoApps' DirectDrop Service are not regulated communications under the TCPA.

24. The VoApps Agreement provided that the parties would "FULLY INDEMNIFY AND HOLD THE OTHER PARTY AND ITS SUBSIDIARIES, AFFILIATES, OFFICERS, AGENTS, CO-BRANDERS OR OTHER PARTNERS, AND EMPLOYEES, FOR ANY CLAIM OR DEMAND, INCLUDING REASONABLE ATTORNEY'S FEES, MADE BY ANY THIRD PARTY, SUCH AS PLAINTIFF, DUE TO THE INDEMNIFYING PARTY'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR VIOLATION OF ANY INTELLECTUAL PROPERTY RIGHTS OF ANOTHER." See Exh. A, ¶ 16.

25. To the extent Dyck-O'Neal is held to be liable to Plaintiff or members of the putative class under the TCPA for delivery of messages using VoApps' DirectDrop Service, Dyck-O'Neal seeks to hold VoApps responsible for the damages Dyck-O'Neal has incurred and will incur as a result of its reasonable reliance upon VoApps' representations, including all attorney's fees and costs incurred by Dyck-O'Neal in defending against Plaintiff's claims.

## COUNT I: INNOCENT MISREPRESENTATION

26. Dyck-O'Neal incorporates paragraphs 1 to 25.

27. VoApps' representations, as set forth in the preceding paragraphs, were made in connection with the making of a contract between Dyck-O'Neal and VoApps.

28. Dyck-O'Neal would not have entered into the VoApps Agreement and used VoApps' DirectDrop Service to deliver voice mail messages to Plaintiff and the putative class members' mobile service provider(s) had VoApps not made such representations.

29. Dyck-O'Neal has been harmed and has suffered economic injury as a result of entering into the VoApps Agreement, and such losses have benefitted VoApps.

30. Dyck-O'Neal has also been harmed and suffered economic injury proximately resulting from its reasonable and justifiable reliance upon VoApps' representations in that it has been subjected to suit, incurred legal expenses and costs associated with the defense of the suit, injury to its reputation, and faces the prospect of additional damages should Plaintiff succeed in her action against Dyck-O'Neal.

### COUNT II: FRAUDULENT MISREPRESENTATION
### (IN THE ALTERNATIVE)

31. Dyck-O'Neal incorporates paragraphs 1 to 30.

32. VoApps intentionally made representations of material fact to Dyck-O'Neal as set forth in the preceding paragraphs.

33. If VoApps' DirectDrop Service is not compliant with existing law, the messages delivered using VoApps' DirectDrop Service constitute calls to a cellular phone and/or messages delivered using VoApps' DirectDrop Service are regulated communications subject to the TCPA, VoApps representations to the contrary are false.

34. VoApps' knew that its representations were false when they were made or made them recklessly, without knowing whether they were true.

35. VoApps intended for Dyck-O'Neal to rely upon the representations.

36. Dyck-O'Neal relied upon such representations, entered into the VoApps Agreement and utilized VoApps' DirectDrop Service to deliver messages to Plaintiff and the putative class members' mobile service providers.

37. As a result of VoApps' fraudulent misrepresentations, Dyck O'Neal has been harmed and suffered economic injury proximately resulting from its reasonable and justifiable reliance upon VoApps' representations in that it has been subjected to suit, incurred legal expenses

and costs associated with the defense of the suit, injury to its reputation, and faces the prospect of additional damages should Plaintiff succeed in her action against Dyck-O'Neal.

### COUNT III: CONTRACTUAL INDEMNIFICATION

38. Dyck-O'Neal incorporates paragraphs 1 to 37.

39. VoApps represented and warranted, *inter alia*, that VoApps' DirectDrop Service is "compliant [with] current law[]", "does not make a voice call to a cellular phone" and is not a "regulated communication under the Telephone Consumer Protection Act." See Exh. A, ¶¶ 6, 17.

40. Per the terms of the VoApps Agreement, VoApps agreed that it would "fully indemnify and hold [Dyck-O'Neal] and its subsidiaries, affiliates, officers, agents, co-branders or other partners, and employees, for any claim or demand, including reasonable attorney's fees, made by any third party due to [VoApps'] gross negligence, willful misconduct, or violation of any intellectual property rights of another." See Exh. A, ¶ 16.

41. Plaintiff has filed a lawsuit against Dyck-O'Neal alleging violations of the TCPA arising from Dyck-O'Neal's use of VoApps' DirectDrop Service to deliver message to Plaintiff and the putative class members' mobile service providers.

42. Dyck-O'Neal would not have entered into the VoApps Agreement or utilized VoApps' DirectDrop Service to deliver messages to Plaintiff and the putative class members' mobile service providers had VoApps not represented to Dyck-O'Neal that VoApps' DirectDrop Service was compliant with existing law, that messages delivered using VoApps' DirectDrop Service do not constitute calls to a cellular phone and that messages delivered using VoApps' DirectDrop Service are not regulated communications under the TCPA.

43. Dyck-O'Neal is incurring attorneys' fees, court costs, and other costs in connection with defending Plaintiff's claims, the exact amount of which is unknown at this time.

44. If Dyck-O'Neal is held to be liable to Plaintiff or members of the putative class under the TCPA for delivery of messages to Plaintiff and the putative class using VoApps' DirectDrop Service notwithstanding VoApps' representations, such fees, costs and any corresponding award of damages are the direct and proximate result of VoApps' misrepresentations.

45. Dyck-O'Neal is entitled to indemnification by VoApps for all costs and reasonable attorney's fees incurred defending against Plaintiff's action and for any sums for which Dyck-O'Neal is found liable as a result of the delivery of any messages to Plaintiff and the putative class using VoApps' DirectDrop Service.

## COUNT IV: COMMON LAW INDEMNITY

46. Dyck-O'Neal incorporates paragraphs 1 to 45.

47. VoApps owed Dyck-O'Neal a duty to deliver the messages at issue pursuant to and in accordance with controlling law.

48. If the messages at issue are communications subject to the TCPA, VoApps has breached its duty to Dyck-O'Neal.

49. If Dyck-O'Neal is found to be liable to Plaintiff or members of the putative class under the TCPA for delivery of messages to Plaintiff and the putative class using VoApps' DirectDrop Service through no fault of its own, any corresponding damages to Plaintiff or the proposed class are a direct and proximate result of VoApps' breach of its duties.

50. VoApps is liable for payment of any sums awarded to Plaintiff.

## COUNT IV: IMPLIED INDEMNITY

51. Dyck-O'Neal incorporates paragraphs 1 to 50.

52. VoApps did not have to affirmatively represent and warrant to Dyck-O'Neal that VoApps' DirectDrop Service was compliant with existing law, that messages delivered using VoApps' DirectDrop Service do not constitute calls to a cellular phone or that messages delivered using VoApps' DirectDrop Service are not regulated communications under the TCPA.

53. In doing so, VoApps agreed to deliver messages ton behalf of Dyck O'Neal that were compliant with existing law, did not constitute calls to cellular phones or qualify as regulated communications under the TCPA.

54. If Dyck-O'Neal is found to be liable to Plaintiff or members of the putative class under the TCPA for delivery of messages to Plaintiff and the putative class using VoApps' DirectDrop Service through no fault of its own, any corresponding damages to Plaintiff or the proposed class are a direct and proximate result of VoApps' failure to provide messages that were compliant with existing law, did not constitute calls to cellular phones or qualify as regulated communications under the TCPA as agreed.

WHEREFORE, Dyck-O'Neal, Inc. requests that the Court enter judgment in its favor and against third-party defendant, VoApps, Inc., for damages incurred by Dyck-O'Neal, including the amount of any judgment entered in favor of Plaintiff in this action, all of Dyck-O'Neal's attorney's fees and costs incurred in defending against Plaintiff's suit and in bringing this third-party complaint, and any further relief this Court deems proper.

        Respectfully submitted,

        VARNUM LLP
        Attorney for Defendant

Dated: October __, 2018        By:    <u>/s/ Charity A. Olson</u>
                                            Charity A. Olson (P68295)
                                            300 N. 5th Avenue, Suite 230
                                            Ann Arbor, MI 48104
                                            Telephone: (734) 372-2900
                                            caolson@varnumlaw.com