**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| KAREN SAUNDERS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:17-cv-00335-JTN-RSK |
| | ) | |
| v. | ) | |
| | ) | |
| DYCK O'NEAL, INC., | ) | Hon. Judge Janet T. Neff |
| | ) | Hon. Mag. Judge Ray Kent |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

**Page**

I.     BACKGROUND ..............................................................................................2

     A.    The TCPA ..............................................................................................2

     B.    Statement of Facts.................................................................................3

     C.    Plaintiff's Response to DONI's "Statement of Facts"...........................3

II.    LEGAL STANDARD.....................................................................................4

III.   ARGUMENT ................................................................................................4

     A.    Plaintiff has Article III standing. ..........................................................4

     B.    Plaintiff's injury is directly traceable to DONI's illegal calling.............9

     C.    DONI's TCPA violations have a close relationship to a harm traditionally regarded as providing a basis for suit at common law...........................................13

IV.   CONCLUSION............................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>Cases</u>

*A.B. v. Mich. Dep't of Educ.*,
    2021 WL 5238728 (W.D. Mich. Nov. 4, 2021)...........................................................4

*ACLU v. NSA*,
    493 F.3d 644 (6th Cir. 2007) .....................................................................................10

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
    790 F.3d 641 (6th Cir. 2015) ......................................................................................4

*Barr v. Am. Ass'n of Pol. Consults., Inc.*,
    140 S. Ct. 2335 (2020)...............................................................................................11

*Buchholz v. Meyer Njus Tanick, PA*,
    946 F.3d 855 (6th Cir. 2020) ....................................................................................10

*Caudill v. Wells Fargo Home Mortg., Inc.*,
    2016 WL 3820195 (E.D. Ky. July 11, 2016)..............................................................6

*Charvat v. NMP, LLC*,
    656 F.3d 440 (6th Cir. 2011) ....................................................................................14

*Cunningham v. Rapid Response Monitoring Servs., Inc.*,
    2017 WL 1489052 (M.D. Tenn. Apr. 26, 2017) .........................................................6

*Dickson v. Direct Energy, LP*,
    2022 WL 889207 (N.D. Ohio Mar. 25, 2022) ............................................................7

*Eldridge v. Cabela's Inc.*,
    2017 WL 4364205 (W.D. Ky. Sept. 29, 2017)......................................................6, 11

*Gadelhak v. AT&T Services, Inc.*,
    950 F.3d 458 (7th Cir. 2020) .............................................................................passim

*Garland v. Orlans, PC*,
    999 F.3d 432 (6th Cir. 2021) ....................................................................................10

*Golan v. FreeEats.com, Inc.*,
    930 F.3d 950 (8th Cir. 2019) ......................................................................................6

*Golan v. Veritas Entm't, LLC*,
    788 F.3d 814 (8th Cir. 2015) ......................................................................................6

*Grigorian v. FCA US LLC*,
   838 F. App'x 390 (11th Cir. 2020) ........................................................................... 7

*Hamza v. Dunhams Athleisure Corp.*,
   2017 WL 1077895 (E.D. Mich. Mar. 22, 2017) ................................................... 8, 14

*Huff v. TeleCheck Servs., Inc.*,
   923 F.3d 458 (6th Cir. 2019) ................................................................................... 7

*Imhoff Inv., L.L.C. v. Alfoccino, Inc.*,
   792 F.3d 627 (6th Cir. 2015) ........................................................................... passim

*Johnson v. Am. Educ. Servs.*,
   2017 WL 938325 (W.D. Ky. Mar. 9, 2017) ........................................................... 6

*LaVigne v. First Cmty. Bancshares, Inc.*,
   215 F. Supp. 3d 1138 (D.N.M. 2016) ..................................................................... 8

*Leyse v. Lifetime Ent. Servs., LLC*,
   679 F. App'x 44 (2d Cir. 2017) ............................................................................... 6

*Lindenbaum v. Realgy, LLC*,
   13 F.4th 524 (6th Cir. 2021) ................................................................................. 12

*Meredith v. United Collection Bureau, Inc.*,
   2018 WL 1782854 (N.D. Ohio Apr. 13, 2018) ..................................................... 5

*Mey v. Got Warranty, Inc.*,
   193 F. Supp. 3d 641 (N.D.W. Va. 2016) ........................................................ 13, 14

*Mey v. Venture Data, LLC*,
   245 F. Supp. 3d 771 (N.D.W. Va. 2017) ............................................................. 12

*Montanez v. Future Vision Brain Bank, LLC*,
   536 F. Supp. 3d 828 (D. Colo. 2021) ................................................................... 10

*Murray v. U.S. Dep't of Treasury*,
   681 F.3d 744 (6th Cir. 2012) ................................................................................. 5

*Parchman v. SLM Corp.*,
   896 F.3d 728 (6th Cir. 2018) ............................................................................... 12

*Patriotic Veterans, Inc. v. Zoeller*,
   845 F.3d 303 (7th Cir. 2017) ............................................................................... 12

*Salcedo v. Hanna*,
   936 F.3d 1162 (11th Cir. 2019) ............................................................................. 7

*Saunders v. Dyck O'Neal, Inc.*,
    2019 WL 5059952 (W.D. Mich. Oct. 4, 2019) ..................................................... 1, 4

*Saunders v. Dyck O'Neal, Inc.*,
    2020 WL 362700 (W.D. Mich. Jan. 22, 2020) ...................................................... 1, 4

*Saunders v. Dyck O'Neal, Inc.*,
    319 F.Supp.3d 907 (W.D. Mich. 2018) ........................................................... passim

*Shank v. Givesurance Ins. Servs., Inc.*,
    2022 WL 561596 (S.D. Ohio Feb. 24, 2022) ............................................................. 7

*Shelton v. Direct Energy, L.P.*,
    2019 WL 4194179 (N.D. Ohio Aug. 27, 2019) .......................................................... 5

*Sierra v. Hallandale Beach*,
    996 F.3d 1110 (11th Cir. 2021) ................................................................................ 7

*Silbaugh v. CenStar Energy Corp.*,
    2018 WL 4558409 (N.D. Ohio Sept. 21, 2018) ................................................... 6, 10

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................................... 2, 5

*St. Louis Heart Center, Inc. v. Nomax, Inc.*,
    899 F.3d 500 (8th Cir. 2018) ................................................................................... 10

*Susinno v. Work Out World Inc.*,
    862 F.3d 346 (3d Cir. 2017) ................................................................................ 6, 15

*Throndson v. Huntington Nat'l Bank*,
    2020 WL 3448281 (S.D. Ohio June 24, 2020) .................................................... 5, 11

*Tillman v. Ally Fin. Inc.*,
    2017 WL 1957014 (M.D. Fla. May 11, 2017) ......................................................... 14

*TransUnion LLC v. Ramirez*,
    141 S.Ct. 2190 (2021) ..................................................................................... 2, 7, 13

*Van Patten v. Vertical Fitness Grp.*,
    847 F.3d 1037 (9th Cir. 2017) ................................................................................. 15

## <u>Statutes</u>

28 U.S.C. § 2403 ...................................................................................................... 11

47 U.S.C. § 227(b)(1)(A)(iii) ...................................................................................... 2

47 U.S.C. § 227(b)(3) ............................................................................................ 9, 15

Pub. Law 102-243, 105 Stat. 2394 (Dec. 20, 1991) ....................................................... 3

## **Other Authorities**

Rest. (2d) of Torts § 217 (1965) ...................................................................... 14

S. Rep. 102-178, 1991 U.S.C.C.A.N. 1968 (Oct. 8, 1991) ...................................... 2, 11

## **Rules**

Fed.R.Civ.P. 5.1 .......................................................................................... 11

DONI's motion to dismiss distorts the facts and law and attempts to relitigate issues that have already been conclusively decided against it. For example, in challenging the causal connection between DONI's calls and Plaintiff's harm, DONI fails to mention that Judge Quist previously addressed this issue in denying its first summary judgment motion:

> The effect [of DONI's calls] on Saunders is the same whether her phone rang with a call before the voicemail is left, or whether the voicemail is left directly in her voicemail box, i.e., Saunders receives a notification on her phone that she has a new voicemail.…
>
> In fact, voicemails are arguably more of a nuisance to consumers than text messages. To limit the TCPA to instances where Dyck O'Neal specifically dialed Saunders' phone number and then reached her voicemail, and exclude Dyck O'Neal's back door into Saunders' voicemail box, would be an absurd result.
>
> The TCPA was created to limit the harassment and nuisance that automated calls and messages place on consumers—which is precisely what Saunders alleges Dyck O'Neal has done. Dyck O'Neal cannot skirt the statute with VoApp's new technology.

*Saunders v. Dyck O'Neal, Inc.*, 319 F.Supp.3d 907, 911 (W.D.Mich. 2018), Dkt. 50. Judge Quist reaffirmed this ruling at least twice in subsequent years as DONI repeatedly re-raised it. *See* 2019 WL 5059952 (W.D.Mich. Oct. 4, 2019), *and* 2020 WL 362700 (W.D.Mich. Jan. 22, 2020).

DONI's motion also plays fast and loose with the facts. Although DONI suggests that Plaintiff's "harm" arose from fear of having to pay a debt, she actually testified that her feelings of frustration, annoyance, bullying, and terror arose directly from DONI's "robotic calls":

Q: Ms. Saunders, what do you understand about the claim you're making against Dyck O'Neal?

A: I understand that these robotic calls or whatever they're being called now, they're -- when you ask people to stop calling you, they are to stop calling. They are just – they're angering. They're frustrating. They're annoying. They're bullying. They're terrifying. They're – they're a lot of things. And when requested for them to stop, they didn't.

Exhibit A, Saunders Dep. at 30. This testimony – and Judge Quist's earlier rulings – clearly trace Plaintiff's harm to the calls at issue in the case.

DONI then argues that a plaintiff seeking to enforce the TCPA has to prove *both* the

- 1 -

elements for a TCPA claim *and also* the elements of a common law intrusion upon seclusion claim, in order to have constitutional standing. No case DONI cites says this. Indeed, this argument not only bucks common sense, it ignores the recent Supreme Court case DONI used to justify this eleventh-hour motion to dismiss, *TransUnion LLC v. Ramirez*, which actually held that injuries with a "close relationship" to traditionally justiciable harms can confer standing. 141 S.Ct. 2190, 2204 (2021). *Ramirez* cites TCPA case *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 462 (7th Cir. 2020), with approval on this point. *Gadelhak* – written by now-Justice Barrett – squarely rejected DONI's argument that common law elements must be present to confer constitutional standing, and instead held that the inquiry requires courts "to look for a 'close relationship' in kind, not degree." *Id.* (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)).

In sum, DONI's entire motion tries to rehash arguments it has already lost, and is based upon improperly distorted factual assertions and failure to properly recite controlling Supreme Court jurisprudence. The motion should, therefore, be denied.

## I.    BACKGROUND

### A.    The TCPA

The TCPA categorically prohibits making any non-emergency call using an artificial or prerecorded voice (i.e., a "robocall") to any cell phone number, without "prior express consent." 47 U.S.C. § 227(b)(1)(A)(iii). The legislative history provides the basis for this prohibition: "[A]utomated telephone calls … can be an invasion of privacy, an impediment to interstate commerce, and a disruption to essential public safety services." S. Rep. 102-178, 5, 1991 U.S.C.C.A.N. 1968, 1972-73 (Oct. 8, 1991). As Congress found, "[b]anning such automated or prerecorded telephone calls [], except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the

consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. Law 102-243, 105 Stat. 2394, § 2(12) (Dec. 20, 1991).

### B.    Statement of Facts

Judge Quist appropriately recited the relevant facts in *Saunders*, 319 F.Supp.3d at 909. DONI used VoApps to call and leave the following prerecorded message on the cellular voicemails of Plaintiff and others:

> This is Dyck-O'Neal with a message. This is an attempt to collect a debt. Please do not erase this message until you call us at 1-877-425-8998. Again, that number is 1-877-425-8998.

Exhibit B, Saunders Decl. ¶ 6. DONI delivered at least 25 such messages to Plaintiff's cell phone, Dkt. 36-6, and at least 225,834 similar prerecorded voicemails to 27,383 unique cell numbers of others. Dkt. 144-2, Hansen Report ¶ 24. Plaintiff never consented to these calls, and DONI ignored her repeated requests to stop sending them. Exhibit A, Saunders Dep. at 30, 34.

At the time of DONI's calls, Plaintiff was a teacher for children with special needs, and generally could not answer the phone while at work. Exhibit B, Saunders Decl. at ¶ 5. Plaintiff was also caring for her elderly parents, and DONI's robotic calls and prerecorded voicemails made doing so more difficult. *Id.* ¶ 8. DONI's "robotic messages" caused Plaintiff to feel angry, frustrated, annoyed, bullied, and terrified. Exhibit A, Saunders Dep. at 30. The messages tied up her phone, invaded her privacy, and wasted her time. *Id.* at 25-26, 29-30; Compl. ¶ 22.

### C.    Plaintiff's Response to DONI's "Statement of Facts"

Plaintiff objects to the misrepresentations in DONI's "statement of facts," Def.'s Br. p. 3. DONI moved for early summary judgment on whether its VoApps messages to cellular voicemails constitute "calls" under the TCPA. It lost not once, but three times, because it kept

trying to re-litigate the issue. Dkt. 50, 115, 118.[1] In striking DONI's last summary judgment motion, including the untimely "expert" report attached to it that is also attached to the instant motion, Judge Quist ruled that "[t]he Court need not rule on the issue a third time." Dkt. 143 p. 3.

Plaintiff objects to DONI's attachment of the King Declaration as Exhibit B to its motion. DONI failed to timely disclose Mr. King as a witness during the merits phase of the case, and Judge Quist granted Plaintiff's prior motion on this point and struck DONI's entire motion, King declaration and all. Dkt. 143, Order at 3. DONI's attempted use of this declaration after it was already found to have been improper is emblematic of why the docket in this case is so long. This Court should disregard the King declaration and strike it again.

## II.    <u>LEGAL STANDARD</u>

"A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may take the form of a facial challenge, which tests the sufficiency of the pleading, or a factual challenge, which contests the factual predicate for jurisdiction." *A.B. v. Mich. Dep't of Educ.*, 2021 WL 5238728, at *3 (W.D. Mich. Nov. 4, 2021) (citation omitted). "In a facial attack, the court accepts as true all the allegations in the complaint[.]" *Id.* at *3 (citation omitted). In a factual attack, "the district court has broad discretion over what evidence to consider and may look outside the pleadings to determine whether subject-matter jurisdiction exists." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015).

## III.    <u>ARGUMENT</u>

### A.    **Plaintiff has Article III standing.**

"Article III of the Constitution gives federal courts subject matter jurisdiction over actual cases or controversies, neither of which exists unless a plaintiff establishes his standing to sue."

---

[1]     *Saunders*, 319 F. Supp. 3d at 912; 2019 WL 5059952, at *1; 2020 WL 362700, at *2.

*Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012) (citations omitted). To have Article III standing, a plaintiff must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (citation omitted).

Both tangible and intangible injuries may constitute "concrete" injuries. *Id.* at 340. To that end, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 341. As Congress is particularly suited "to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Id.*

*Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 631-33 (6th Cir. 2015)—which DONI neglected to cite—squarely addressed Article III standing in the TCPA context, holding that the receipt of a junk fax in alleged violation of the TCPA alone constitutes an "injury in fact" sufficient for standing. Citing Circuit precedent and the text and history of the TCPA, *Imhoff* affirmed that a TCPA violation presents a concrete, substantive injury conferring Article III standing, including waste of the recipient's time and the temporary seizure or occupancy of the recipient's phone service. *Id.* Indeed, the majority of decisions to consider whether the recipient of nonconsensual robocalls has Article III standing have had resoundingly held, "Yes."[2]

---

[2]     *E.g., Throndson v. Huntington Nat'l Bank*, 2020 WL 3448281, at *8 (S.D. Ohio June 24, 2020) ("[P]rerecorded debt-collection calls to cellular phones [in that case, left as voicemails], in violation of § 227(b)(1)(A)(iii), can create intangible but concrete injuries such as nuisance and invasion of privacy. Many other courts have reached the same conclusion."); *Meredith v. United Collection Bureau, Inc.*, 2018 WL 1782854, at *3 (N.D. Ohio Apr. 13, 2018) (prerecorded voicemails from debt collector conferred standing in TCPA case); *Shelton v. Direct Energy, L.P.*, 2019 WL 4194179, at *3 (N.D. Ohio Aug. 27, 2019) (denying motion to dismiss TCPA robocall

Several Circuit Courts have concurred specifically as to prerecorded voicemail messages, too.[3]

And as Judge Quist previously held, the "ringless" nature of DONI's voicemails does not somehow negate the harm Plaintiff incurred; DONI's VoApps calls presented "the same" as any other missed calls that went to voicemail—which courts have "consistently" found are subject to the TCPA. *Saunders*, 319 F. Supp. 3d at 909-11. In *Silbaugh v. CenStar Energy Corp.*, 2018 WL 4558409, at *3 (N.D. Ohio Sept. 21, 2018), for example, the court found allegations of harm like those Plaintiff's testified to here – nuisance, invasion of privacy, waste of time and resources, *see* Compl. ¶ 22 – sufficient to confer standing in a "ringless" voicemail TCPA robocall case. *Silbaugh* also recognized that the fact the prerecorded messages took up space in consumers' voicemail boxes was akin to the harm of lost call or fax opportunity caused by temporarily tying up a phone line—analogous to the Six Circuit's holding in *Imhoff*.[4] *Id.* Other decisions concur.[5]

One court in this Circuit recently did find Article III standing absent in a "ringless

---

case for standing); *Eldridge v. Cabela's Inc.*, 2017 WL 4364205, at *7 (W.D. Ky. Sept. 29, 2017) (finding standing in TCPA robocall case, noting "[t]he harms alleged here are the exact types of harm courts within this circuit have found sufficient even after *Spokeo*"); *Caudill v. Wells Fargo Home Mortg., Inc.*, 2016 WL 3820195, at *2 (E.D. Ky. July 11, 2016) (same); *Johnson v. Am. Educ. Servs.*, 2017 WL 938325, at *3 (W.D. Ky. Mar. 9, 2017) (same); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 2017 WL 1489052, at *3 (M.D. Tenn. Apr. 26, 2017) (same).

[3]    *See Susinno v. Work Out World Inc.*, 862 F.3d 346, 352 (3d Cir. 2017) (TCPA plaintiff's receipt of a single, prerecorded voicemail message constituted sufficiently concrete harm for Article III standing, akin to the common law tort of intrusion upon seclusion); *Leyse v. Lifetime Ent. Servs., LLC*, 679 F. App'x 44, 46 (2d Cir. 2017); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 958 (8th Cir. 2019); *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819-21 (8th Cir. 2015).

[4]    *See Imhoff*, 792 F.3d at 633 (finding that "viewing or printing a fax advertisement is not necessary to suffer a violation of the statutorily-created right to have one's phone line and fax machine free of the transmission of unsolicited advertisements[,]" and recognizing the occupation of the recipient's phone line is alone sufficient to confer standing).

[5]    *E.g.*, *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1251 (S.D. Fla. 2019) (finding harms incurred from nonconsensual "ringless" voicemails "are not mere 'procedural' statutory violations; rather, they are precisely the kinds of harm the TCPA aims to prevent"); *Albrecht v. Oasis Power, LLC*, 2018 WL 11269232, at *2 (N.D. Ill. Oct. 11, 2018) (finding Article III standing present in TCPA case where plaintiff nonconsensual "ringless voicemail" calls allegedly invaded plaintiff's privacy).

voicemail" case, relying on the text message case of *Salcedo v. Hanna*, 936 F.3d 1162, 1167-68 (11th Cir. 2019). *Dickson v. Direct Energy, LP*, 2022 WL 889207, at *3-4 (N.D. Ohio Mar. 25, 2022). Plaintiff respectfully submits that *Dickson* – and *Salcedo* – got it wrong, and are distinguishable. Both *Dickson* and *Salcedo* focused on the quantity of violations, rather than their likeness to harms actionable at common law, with *Dickson* holding that receipt of a single ringless voicemail was too "de minimis" to confer standing. Such reasoning is inapplicable here, where Plaintiff received 25 ringless voicemails despite repeated pleas that they stop.

Focusing Article III analysis on the *quantity* rather than the *kind* of harm is also a legal error, as explained in *Ramirez*, 141 S. Ct. at 2204. *Ramirez* even cites to the page in *Gadelhak* that discusses "kind versus degree" and rejects *Salcedo* with approval. *Id*. And *Dickson*'s reliance on another, unreported Eleventh Circuit decision, *Grigorian v. FCA US LLC*, 838 F. App'x 390 (11th Cir. 2020), to assert that loss of time alone is insufficient to impart Article III standing, contradicts this Circuit's *Imhoff* decision, which recognized the harm an unsolicited communication causes in "wast[ing] the recipients' time." 792 F.3d at 632.[6] Respectfully, the Court should reject any invitation by DONI to follow such non-binding case law, which is inconsistent with *Ramirez*, *Imhoff*, and the majority of other Circuits' decisions.[7]

When one considers the "kind" of harm caused by the calls at issue here, constitutional

---

[6]     *See also Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 463 (6th Cir. 2019) (suggesting that if plaintiff in FCRA case had alleged that "he wasted time or suffered emotional distress," then he might have had Article III standing).

[7]     *E.g., Shank v. Givesurance Ins. Servs., Inc.*, 2022 WL 561596, at *4 (S.D. Ohio Feb. 24, 2022) (finding standing in TCPA case for single unsolicited text message, noting that, "[u]nlike the Eleventh Circuit, the Second, Fifth, Seventh and Ninth Circuits have held that Article III standing is satisfied under the TCPA when one or more unconsented text messages are sent"). Indeed, in addition to being squarely rejected by Justice Barrett in *Gadelhak*, the disparate and seemingly arbitrary outcomes in similar cases in the Eleventh Circuit led one Circuit Judge to remark how its "Article III standing jurisprudence has jumped the tracks." *Sierra v. Hallandale Beach*, 996 F.3d 1110, 1116-1117 (11th Cir. 2021) (Newsom, concurring; citing *Salcedo*).

standing snaps into focus. "The TCPA codifies the application of a long-recognized common law tort of invasion of privacy (and … nuisance as well) for a particularly intrusive type of unwanted conduct: unauthorized 'robocalls.'" *LaVigne v. First Cmty. Bancshares, Inc.*, 215 F. Supp. 3d 1138, 1147 (D.N.M. 2016). In *Gadelhak*, 950 F.3d at 462—which (again) was cited with approval by the Supreme Court in *Ramirez*—Justice (then Circuit Judge) Barrett held that nonconsensual text message calls[8] cause concrete harm, reasoning: (1) first, that the common law recognized intrusion upon seclusion as a justiciable harm, and (2) second, that in enacting the TCPA, "Congress identified a modern relative of a harm with long common law roots"—that is, nonconsensual, automated calling. Such harm exists here.

As in *Gadelhak*, Plaintiff incurred a concrete injury-in-fact: DONI's calls intruded onto Plaintiff's solitude and intermeddled with her life, phone, and voicemail box in a manner that bears a "close relationship" to the common law torts of intrusion upon seclusion and trespass to chattels:[9] DONI's dozens of nonconsensual robocalls forced her to waste time addressing them, tied up use of her phone,[10] distracted Plaintiff from taking care of her elderly parents, took up space on her voicemail, physically manifested on her cell phone by way of message-waiting notifications, and made her aggravated, annoyed, and upset—further exacerbated because DONI

---

[8]     A text message is a "call" under the TCPA, and is subject to the same restriction as Plaintiff's claim here, 47 U.S.C. § 227(b)(1)(A)(iii). *Saunders*, 319 F. Supp. 3d at 910.

[9]     *Cf. Hamza v. Dunhams Athleisure Corp.*, 2017 WL 1077895, at *4 (E.D. Mich. Mar. 22, 2017) ("The harm caused by unwanted phone calls is closely related to an invasion of privacy, which is a widely recognized common law tort.").

[10]    Each of the dozens of DONI voicemails Plaintiff received lasted approximately 20 seconds each. *E.g.,* Dkt. 171-6 (recording transcript). Additionally, Plaintiff necessarily had to spend time accessing her phone and voicemail in order to remove the "message waiting" notification that displayed when DONI called her. *See* Exhibit A, Saunders Dep. at 26; Exhibit C, Gies Dep. at 25, 28-29, 58 (describing how DONI's VoApps calls cause a "message waiting indicator" to display on the call recipient's cell phone, to inform them that they received the voicemail and help ensure that they listen to DONI's message and call back).

wouldn't stop after she repeatedly asked it to. *See* Dkt. 36-6 (DONI's call data for Plaintiff); Compl. ¶ 22; Exhibit A, Saunders Dep. at 25-26, 29-30, 32; Exhibit B, Saunders Decl. ¶¶ 2, 6-9.

Plaintiff's were not conjectural or hypothetical injuries; they "actually exist[ed]." *Gadelhak*, 950 F.3d at 461. The harm to Plaintiff was particularized, too, because she – herself, personally – received the calls and experienced them. Exhibit A, Saunders Dep. at 30. Plaintiff's injury was "fairly traceable to the defendant's allegedly unlawful conduct" because DONI sent the calls to Plaintiff's cell number. Exhibit C, Gies Dep. at 51-52 (DONI included Plaintiff's phone number in "input" file it instructed VoApps to contact).[11] Plus, the injury is redressable through the damages and injunctive relief afforded by the TCPA, 47 U.S.C. § 227(b)(3).

As such, Plaintiff has standing because she suffered a concrete, particularized injury-in-fact that is fairly traceable to DONI's illegal conduct, for which the law entitles her to relief.

### B.    Plaintiff's injury is directly traceable to DONI's illegal calling.

DONI's brief cuts-and-pastes snippets of Plaintiff's testimony in order to fabricate a false narrative that Plaintiff wasn't *really* harmed by its TCPA violations, and was instead concerned with possible responsibility for her ex-husband's loan. Def.'s Br. at 5-6. Its further speculation that Plaintiff "inherently acknowledg[es] that *live* messages would have been both legal and the cause of the same harm," and its false claim that, "by her own admission," the harm Plaintiff suffered was "solely the result of having to deal with a debt she thought she resolved through her divorce," *Id.*, take substantial liberties that defy candor. These tricks fail to overcome the true substance of Plaintiff's testimony: These "robotic calls" harmed Plaintiff.

DONI's gaslighting ignores Plaintiff's complaint (¶ 22), the past five years of litigation,

---

[11]    Docket Entry 36-6 consists of DONI's VoApps data for Plaintiff's phone number. The "input" file pages (i.e., the pages that don't reflect a call disposition) show that DONI had VoApps call Plaintiff with the prerecorded message DONI chose on dozens of occasions.

and perhaps most egregiously, Plaintiff's explicit testimony that DONI's "robotic calls … are just -- they're angering. They're frustrating. They're annoying. They're bullying. They're terrifying. They're – they're a lot of things. And when requested for them to stop, they didn't…." Exhibit A, Saunders Dep. p. 30, 32. As Judge Quist explicitly found previously, this harm is "precisely" the type the TCPA was designed to redress. *Saunders*, 319 F.Supp.3d at 911.

The decisions DONI's brief cites to suggest that Plaintiff's injury isn't traceable to its robocalls are inapposite because they rejected standing where the plaintiffs' asserted "harm" was self-inflicted or untethered to the basis for their claims.[12] These decisions differ substantially from this case, where DONI's unwanted calls were *in themselves* what violated Plaintiff's privacy and caused Plaintiff, herself, injury. *See* Compl. ¶ 22.[13] And DONI certainly cannot claim the harm was self-inflicted, given Plaintiff's repeated requests that it stop.[14]

This Court should also reject DONI's suggestion that Congress somehow lacked the

---

[12]    For example, in *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 865-70 (6th Cir. 2020), and *Garland v. Orlans, PC*, 999 F.3d 432, 441 (6th Cir. 2021), the Court found Article III standing didn't exist where the asserted harm – anxiety about debt collection or foreclosure – was grounded in the plaintiff's self-inflicted fear of having to pay his own debt, as opposed to any actual harm from the procedural FDCPA letter-violations on which their claims were based. Similarly, in *ACLU v. NSA*, 493 F.3d 644, 649 (6th Cir. 2007), which challenged post-9/11 warrantless wiretapping by the NSA, the Court found that Article III standing didn't exist where the asserted harm – a self-imposed chilling of communications with overseas contacts – wasn't due to the wiretaps' alleged illegal nature of being "warrantless." By contrast, Plaintiff's injury here arose directly from the robotic calls upon which this case is based.

[13]    Moreover, unlike the "bare procedural violations" in *Buchholz* and *Garland* (both procedural letter-violation cases), the TCPA implicates substantive rights. *See Silbaugh*, 2018 WL 4558409, at *2 ("Post-*Spokeo* some courts have acknowledged that the prohibitions in the TCPA are distinguishable from the FCRA's procedural requirements.").

[14]    DONI's brief's citation to *St. Louis Heart Center, Inc. v. Nomax, Inc.*, 899 F.3d 500, 503 (8th Cir. 2018), omits crucial information: Regardless of whether the faxes at issue there had an opt-out notice required under the TCPA, standing couldn't exist because that plaintiff *asked for* the faxes he sued about. *Montanez v. Future Vision Brain Bank, LLC*, 536 F. Supp. 3d 828, 835 (D. Colo. 2021) (distinguishing *St. Louis Heart* on this basis). This case is more like *Imhoff*, 792 F.3d at 629-34, because not only is there is no evidence Plaintiff ever consented to DONI's calls, but she repeatedly asked for them to stop! Exhibit A, Saunders Dep. at 29-30, 32; Compl. ¶ 18.

ability to make nonconsensual, prerecorded-voice calls to cell numbers illegal because, in DONI's view, "*live* messages … cause [] the same harm."[15] Def.'s Br. pp. 6-11. DONI's position contradicts Sixth Circuit precedent, which expressly recognized that: (1) Congress has the power to enact statutes creating legal rights that can confer standing "where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights," and (2) "[t]he TCPA is just such a statute." *Imhoff*, 792 F.3d at 633.

Indeed, DONI is wrong that the harm caused by prerecorded-voice calls and "live" voice calls is the same: In rejecting this argument, another court in this Circuit found that it "ignores the reason Congress enacted the TCPA in the first place." *Eldridge v. Cabela's Inc.*, 2017 WL 4364205, at *7 (W.D. Ky. Sept. 29, 2017).[16] The legislative history is pellucid:

> [I]t is clear that automated telephone calls that deliver an artificial or prerecorded voice message are more of a nuisance and a greater invasion of privacy than calls placed by 'live' persons. These automated calls cannot interact with the customer except in preprogrammed ways, do not allow the caller to feel the frustration of the called party, fill an answering machine tape or a voice recording service, and do not disconnect the line even after the customer hangs up the telephone.

S. Rep. 102-178, 4-5. "In enacting the TCPA, Congress found that banning robocalls was 'the only effective means of protecting telephone consumers from this nuisance and privacy invasion.'" *Barr v. Am. Ass'n of Pol. Consults., Inc.*, 140 S. Ct. 2335, 2344 (2020) (quoting Pub. Law 102-243, § 2(12)) (emphasis added). This robocall ban has been consistently upheld in the more than three decades of its existence—including by the Supreme Court in *Barr* and the Sixth

---

[15]    Of course, to the extent DONI wants this Court to invalidate the TCPA's robocall prohibition, it was required to notify the U.S. Attorney General under Fed.R.Civ.P. 5.1, which it did not do. If the Court is inclined to accept DONI's arguments, Plaintiff thus respectfully requests that it first certify the issue for the Attorney General, pursuant to 28 U.S.C. § 2403.

[16]    *See also Throndson*, 2020 WL 3448281, at *8 (rejecting similar argument in TCPA robocall case, noting that "[t]o hold otherwise would virtually preclude anyone from having standing to assert a violation of § 227(b)(1)(A)(iii) due to an entity's use of prerecorded calls").

Circuit in *Lindenbaum v. Realgy, LLC*, 13 F.4th 524, 527 (6th Cir. 2021).[17]

DONI's efforts to compare the robocalls Plaintiff received to calls with a "live" representative is thus an irrelevant, strawman argument because Congress acted within its authority to restrict nonconsensual robocalling it found to be a heightened nuisance and privacy invasion than "live" voice calling. Indeed, DONI's VoApps calls impose an even *greater* privacy invasion than the more common kind of "press 1" robocalls, which at least allow the recipient to follow a prompt to speak with a live person.[18] Instead, the calls here dumped DONI's prerecorded messages into Plaintiff's cellular voicemail automatically, forcing the entire communication on her without her consent, taking up space on her voicemail, imposing message notifications on her phone that she had to go through to remove, and then putting the onus on Plaintiff to waste even more time calling DONI back to try to get the calls to stop.[19] Exhibit A, Saunders Dep. at 25-26, 29-30, 32.[20] It is no wonder that they caused her to be angry, frustrated, and annoyed. *Id.* at 30. These real harms are what the TCPA was enacted to prevent.[21]

---

[17]     *Lindenbaum* was the basis for DONI's prior motion to stay these proceedings, Dkt. 195, which Plaintiff opposed, Dkt. 199 (citing numerous cases upholding the TCPA's robocall ban).

[18]     *See Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 306 (7th Cir. 2017) ("The lack of a live person makes the call frustrating for the recipient but cheap for the caller, which multiplies the number of these aggravating calls in the absence of legal controls.").

[19]     As this Court itself noted, "Courts have consistently held that voicemail messages are subject to the same TCPA restrictions as traditional calls." *Saunders*, 319 F. Supp. 3d at 909.

[20]     The calls at issue were totally automated, and do not permit interaction like a live call would. Exhibit C, Gies Dep. at 43-44 ("If an end customer no longer wants to be contacted by [DONI], they would have to call our client and let them know or notify them, send them a cease and desist, whatever the case may be.").

[21]     *See Parchman v. SLM Corp.*, 896 F.3d 728, 738 & n.4 (6th Cir. 2018) ("the primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls ... [including] 'annoyance' and 'waste [of] the recipients' time'"); *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 781-83 (N.D.W. Va. 2017) (identifying invasion of privacy,  intrusion upon and occupation of the capacity of the plaintiff's cell phone, depletion of a cell phone's battery or cost of electricity; temporary electronic intrusion upon another person's device, and wasted time as concrete injuries for purposes of Article III standing in TCPA cases).

As Judge Quist held years ago, "[t]he TCPA was created to limit the harassment and nuisance that automated calls and messages place on consumers—which is precisely what Saunders alleges Dyck O'Neal has done." *Saunders*, 319 F. Supp. 3d at 911-12. The violation of Plaintiff's statutory privacy rights is directly traceable to DONI sending its nonconsensual robocalls to her cell number, and is a concrete and particularized harm sufficient for standing.[22]

### C.    DONI's TCPA violations have a close relationship to a harm traditionally regarded as providing a basis for suit at common law.

Bizarrely, DONI's brief acknowledges the Supreme Court's instruction in *Ramirez*, 141 S. Ct. at 2209, that a legal right needn't be an "exact duplicate" of a common law cause of action to confer Article III standing, but then insists that Plaintiff must establish each element of an intrusion upon seclusion claim – in addition to proving the elements of a TCPA claim – or suffer dismissal. This is wrong.[23] "While the common law tort may require different elements than the TCPA, the Supreme Court's focus in *Spokeo* was not on the elements of the cause of action but rather on whether the harm was of a type that traditionally provides a basis for a common law claim." *Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641, 645-48 (N.D.W. Va. 2016) (standing in

---

[22]    If DONI doesn't like the TCPA robocall prohibition, or if it thinks live-voice calls should face similar restrictions, then its recourse is to not use them, or to raise it with the legislature.

[23]    *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), though misapplied in DONI's brief, is instructive. In that FCRA class action, the Court ruled that consumers whose credit reports TransUnion had disseminated to third parties with a "potential" terrorist flag suffered a concrete injury-in-fact that bore a "close relationship" to the reputational harm associated with the common law tort of defamation; whereas, those whose reports were never disseminated did not. *Id.* at 2208-12. This makes sense, because the essence of the defamation tort addresses reputational harm, and someone whose reputation was never denigrated didn't experience the harm for which a claim might exist. Along those same lines, DONI here created "input" files that instructed VoApps which phone numbers to call. Exhibit C, Gies Dep. at 51-52. Some numbers never got called (whether due to a technical issue or otherwise); whereas others did. Dkt. 36-6 (sample input/output files). *Ramirez* says only class members who suffered the privacy intrusion have Article III standing. Thus, consistent with *Ramirez*, this case concerns persons who *received* DONI's calls, only—like Plaintiff.

TCPA robocall case); *see also Gadelhak*, 950 F.3d at 462.[24]

The harm Plaintiff incurred from DONI's TCPA violations bears a "close relationship" to the intrusion-based harms associated with the common law torts of invasion of privacy, intrusion upon seclusion, and trespass to chattels[25]—i.e., intrusion onto one's solitude or intermeddling with property, which Plaintiff experienced. As Justice Barrett reasoned in *Gadelhak*, "[a] few unwanted automated [calls] may be too minor an annoyance to be actionable at common law. But such [calls] nevertheless pose the same kind of harm that common law courts recognize—a concrete harm that Congress has chosen to make legally cognizable." 950 F.3d at 463.

DONI's brief admits that "a claim for intrusion on seclusion could exist if 'telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the Plaintiffs.'" Def.'s Br. p. 15 (quoting *Charvat*, 656 F.3d at 454).[26] Because this concedes a

---

[24]     *Garland* is inapposite. Unlike the plaintiff in that case, Plaintiff here doesn't allege general anxiety or confusion about having to pay a debt as the sole harms underpinning her claims, and so it doesn't matter that such harms, which aren't actionable generally at common law, were deemed insufficient for standing in a "bare" procedural letter-violation FCRA case (let alone when self-inflicted, as in *Garland*). By contrast, the Sixth Circuit has confirmed that TCPA violations *do* implicate the same kind of harms actionable at common law. *Imhoff*, 792 F.3d at 633 (TCPA promotes an "interest in seclusion"); *Charvat v. NMP, LLC*, 656 F.3d 440, 453 (6th Cir. 2011) (citing "nuisance and an invasion of privacy" from automated calls and messages).

[25]     *E.g., Hamza*, 2017 WL 1077895, at *4 ("The harm caused by unwanted phone calls is closely related to an invasion of privacy, which is a widely recognized common law tort."); *Tillman v. Ally Fin. Inc.*, 2017 WL 1957014, at *7 (M.D. Fla. May 11, 2017) ("Even if plaintiff was away from his phone at the time of the unwanted call and the call went to voicemail, plaintiff would still receive notification of a voicemail and plaintiff would sometimes listen to the voicemails. In any scenario, plaintiff would have been aware of the calls because they were not completely blocked, which is an intrusion upon seclusion that the Court previously identified as sufficient to establish Article III standing.") (citation omitted); *Mey*, 193 F. Supp. 3d at 645-48 ("The harm recognized by the ancient common law claim of trespass to chattels—the intentional dispossession of chattel, or the use of or interference with a chattel that is in the possession of another, is a close analog for a TCPA violation.") (citing Rest. (2d) of Torts § 217 (1965)).

[26]     DONI's assertion that Plaintiff faces a "higher" bar for establishing a concrete injury for debt collection calls than for telemarketing calls is made from whole cloth. Its basis for that argument—i.e., that *Charvat* distinguished these types of calls, Def.'s Br. pp. 13-14—ignores that *Charvat's* discussion was in the context of the sufficiency of the plaintiff's state-law claim

"'close relationship' in kind" between Plaintiff's harm and a common law tort, *Gadelhak*, 950 F.3d at 462, this alone merits denying DONI's motion.[27]

Likewise, DONI's suggestion that Plaintiff lacks standing because in some instances she didn't have her phone on her ignores the nature of voicemails. As Judge Quist previously found:

> The effect on Saunders is the same whether her phone rang with a call before the voicemail is left, or whether the voicemail is left directly in her voicemail box, i.e., Saunders receives a notification on her phone that she has a new voicemail. The effect on Saunders is also the same in receiving a text message—which would fall under the TCPA—each time, she received a notification on her phone that she had a new message, and had to take steps to review or delete the message. In fact, voicemails are arguably more of a nuisance to consumers than text messages….

*Saunders*, 319 F. Supp. 3d at 911-12 (spacing modified); *see also Susinno*, 862 F.3d at 352 (finding, in TCPA case, that unwanted voicemail is a concrete harm); *Van Patten v. Vertical Fitness Grp.*, 847 F.3d 1037, 1043 (9th Cir. 2017) (same, for text messages).

In short, the close relation between Plaintiff's statutory injuries and common law privacy torts establishes a concrete injury-in-fact. Because Plaintiff's injuries are fairly traceable to DONI's conduct in calling her, and the TCPA affords Plaintiff a means of redress under 47 U.S.C. § 227(b)(3), Plaintiff has Article III standing, and DONI's motion should be denied.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny DONI's motion to dismiss, and strike the untimely declaration of David A. King that DONI attached as Exhibit B to its brief.

---

for invasion of privacy, not Article III standing. Plus, Plaintiff isn't even a debtor.

[27] The Sixth Circuit in *Charvat* ultimately upheld the plaintiff's invasion of privacy claim based upon 31 robocalls. 656 F.3d at 454. Thus, logic dictates that Plaintiff here could likewise do so for the 25 robocalls she got, including despite multiple requests to stop. Dkt. 36-3; <u>Exhibit A</u>, Saunders Dep. at 29-30. But this is beside the point: Standing analysis looks to kind, not degree.

Dated: April 15, 2022     Respectfully submitted,

          KAREN SAUNDERS

          By:  *s/ Alexander H. Burke*
           Alexander H. Burke
           BURKE LAW OFFICES, LLC
           909 Davis St., Suite 500
           Evanston, IL 60201
           Telephone: (312) 729-5288
           aburke@burkelawllc.com

           Larry P. Smith
           David Marco
           SMITHMARCO, P.C.
           55 W Monroe St., Suite 1200
           Chicago, IL 60603
           Telephone: (888) 822-1777
           lsmith@smithmarco.com
           dmarco@smithmarco.com

          *Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.2(b)(ii), the undersigned certifies that this brief contains 5,942 words

according to Microsoft Word 365, excluding the caption, title, signature block, and certifications.

          *s/ Alexander H. Burke*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 15, 2022, I am causing a true and correct copy of this

Plaintiff's Opposition to Defendant's Motion to Dismiss to be sent to Defendant's following

counsel of record via electronic mail:

Dale T. Golden                              Eugene X. Martin, IV
GOLDEN SCAZ GAGAIN PLLC                     MALONE AKERLY MARTIN PLLC
201 N. Armenia Ave.                         8750 N. Central Expy., Ste. 1850
Tampa, FL 33609                             Dallas, TX 75231
dgolden@gsgfirm.com                         xmartin@mamlaw.com

Mark S. Pendery
HONIGMAN (GR)
300 Ottawa Ave. NW, Ste. 400
Grand Rapids, MI 49503
mpendery@honigman.com


                                            _s/ Alexander H. Burke_____