**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| KAREN SAUNDERS, | ) | |
| Plaintiff, | ) | Case No. 1:17-cv-00335 |
| | ) | |
| v. | ) | |
| | ) | |
| DYCK O'NEAL, INC., | ) | Hon. Judge Janet T. Neff |
| Defendant. | ) | Hon. Mag. Judge Ray Kent |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**CLASS CERTIFICATION AND SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    CLASS CERTIFICATION SHOULD BE GRANTED. ......................................................2

    A.    The Class Is Ascertainable..................................................................................2

    B.    The Rule 23(a) Requirements Are Satisfied. .....................................................2

        1.    Numerosity......................................................................................2

        2.    Commonality...................................................................................3

        3.    Typicality .......................................................................................3

        4.    Adequacy. .......................................................................................6

    C.    Rule 23(b)(3) Is Satisfied. ................................................................................6

        1.    The prerecorded Direct Drop voicemails at issue intruded upon each class member's seclusion, invaded their privacy, and trespassed upon their chattels in violation of the TCPA.................................................6

        2.    DONI's assertions about the purported difficult in identifying class members are untested, meritless, and contradict settled law. ...................10

        3.    The class poses no manageability concerns.................................................15

        4.    The Court should reject DONI's hypotheticals that consent evidence it never produced might nonetheless still exist. ...........................................20

        5.    DONI's unsupported attacks on Plaintiff's expert are meritless. .............22

II.   THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR PLAINTIFF AND THE CLASS. ...............................................................................................25

    A.    Actual Authority and Formal Agency.................................................................28

    B.    Apparent Agency ...............................................................................................30

    C.    Ratification.........................................................................................................32

III.  ADDITIONAL FACTS ...............................................................................................33

IV.   CONCLUSION ...............................................................................................35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>Cases</u>

*ABS Indus., Inc. ex rel. ABS Litig. Tr. v. Fifth Third Bank*,
    333 F. App'x 994 (6th Cir. 2009) ............................................................ 30

*ACA Int'l v. FCC*,
    885 F.3d 687 (D.C. Cir. 2018) .............................................................. 21

*Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*,
    757 F.3d 540 (6th Cir. 2014) ............................................................ 1, 10

*APB Associates, Inc. v. Bronco's Saloon, Inc.*,
    297 F.R.D. 302 (E.D. Mich. 2013) ........................................................ 11

*Arrow Fin. Servs., LLC v. Wright*,
    311 Ga. App. 319 (Ga. App. 2011) ........................................................ 4

*Ash Grove Cement Co. v. Employers Ins.*,
    246 F.R.D. 656 (D. Kan. 2007) ........................................................... 15

*Bank of Cave Spring v. Gold Kist, Inc.*,
    173 Ga. App. 679 (1985) ..................................................................... 4

*Benson v. Asset Acceptance, LLC*,
    310 Ga. App. 1 (2011) ......................................................................... 4

*Bittinger v. Tecumseh Prods. Co.*,
    123 F.3d 877 (6th Cir. 1997) ................................................................ 3

*Blow v. Bijora, Inc.*,
    855 F.3d 793 (7th Cir. 2017) .............................................................. 21

*Bradley v. DentalPlans.com*,
    617 F. Supp. 3d 326 (D. Md. 2022) ..................................................... 31

*Bridging Communities Inc. v. Top Flite Financial Inc.*,
    843 F.3d 1159 (6th Cir. 2016) ..................................................... passim

*Brown v. DirecTV, LLC*,
    562 F. Supp. 3d 590 (C.D. Cal. 2021) ................................................. 19

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004) .............................................................. 20

*DeJulius v. New England Health Care Emps. Pension Fund,*
    429 F.3d 935 (10th Cir. 2005) ................................................................ 12

*Del Valle v. Glob. Exch. Vacation Club,*
    320 F.R.D. 50 (C.D. Cal. 2017) ............................................................... 18

*Dickson v. Direct Energy, LLC,*
    69 F.4th 338 (6th Cir. 2023) ....................................................... 7, 8, 28

*Dottore v. Huntington Nat. Bank,*
    480 F. App'x 351 (6th Cir. 2012) ............................................................ 4

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156, 173 (1974) ........................................................................ 12

*EPAC Techs., Inc. v. Harpercollins Christian Publ'g, Inc.,*
    2019 WL 109371 (M.D. Tenn. Jan. 4, 2019) ........................................ 15

*Fidel v. Farley,*
    534 F.3d 508 (6th Cir. 2008) ........................................................... 13, 18

*FTC v. Morton Salt Co.,*
    334 U.S. 37 (1948) .................................................................................. 20

*Great Earth Cos. v. Simons,*
    288 F.3d 878 (6th Cir. 2002) ................................................................... 4

*Green v. Cavalry Portfolio Servs., LLC,*
    305 Ga. App. 843 (2010) .......................................................................... 4

*Hurst v. Monitronics Int'l, Inc.,*
    2016 WL 523385 (N.D. Ga. Feb. 10, 2016), *aff'd*, 682 F. App'x 743 (11th Cir. 2017) ............ 4

*Hutto v. CACV,*
    308 Ga. App. 469 (2011) .......................................................................... 5

*In re SE Milk Antitrust Litig.,*
    2012 WL 2050865 (E.D.Tenn. 2012) ................................................... 13

*In re Skechers Toning Shoe Products Liability Litig.,*
    2012 WL 3312668 (W.D.Ky. 2012) ....................................................... 13

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.,*
    2007 WL 1455996 (N.D. Ohio May 15, 2007) ..................................... 16

*In Re UPL Advisory Opinion 2002-1,*
    277 Ga. 521 (2004) ................................................................................... 5

*Innovative Acct. Sols., Inc. v. Credit Process Advisors, Inc.*,
　335 F.R.D. 106 (W.D. Mich. 2020) ....................................................................... 10

*Johnson Associates Corp. v. HL Operating Corp.*,
　680 F.3d 713 (6th Cir. 2012) ................................................................................. 5

*Karkoukli's, Inc. v. Dohany*,
　409 F.3d 279 (6th Cir.2005) ................................................................................. 12

*Keim v. ADF MidAtlantic, LLC*,
　328 F.R.D. 668 (S.D. Fla. 2018) ........................................................................... 16

*Kern v. VIP Travel Servs.*,
　2017 WL 1905868 (W.D. Mich. May 10, 2017) ..................................................... 29

*Knapper v. Cox Commc'ns, Inc.*,
　329 F.R.D. 238 (D. Ariz. 2019) ............................................................................. 19

*Krakauer v. Dish Network L.L.C.*,
　311 F.R.D. 384 (M.D.N.C. 2015) .......................................................................... 23

*Kumho Tire Co. v. Carmichael*,
　526 U.S. 137 (1999) .............................................................................................. 15

*Ladd v. Nashville Booting, LLC*,
　2023 WL 3400485 (M.D. Tenn. May 11, 2023) ....................................................... 3

*LaVigne v. First Cmty. Bancshares, Inc.*,
　330 F.R.D. 293 (D.N.M. 2019) ....................................................................... 17, 19

*Lushe v. Verengo Inc.*,
　2015 WL 500158 (C.D. Cal. Feb. 2, 2015) ............................................................ 32

*Manasher v. NECC Telecom*,
　310 F. App'x 804 (6th Cir. 2009) ........................................................................... 5

*Mey v. Venture Data, LLC*,
　245 F. Supp. 3d 771 (N.D.W. Va. 2017) ................................................................. 8

*Mullane v. Cent. Hanover Bank & Trust Co.*,
　339 U.S. 306, 313 (1950) ...................................................................................... 12

*Mullins v. Direct Digital, LLC*,
　795 F.3d 654 (7th Cir. 2015) ....................................................................... 13, 18, 21, 22

*Newell Rubbermaid, Inc. v. Raymond Corp.*,
　676 F.3d 521 (6th Cir. 2012) ................................................................................ 14

*Nyankojo v. North Star Capital Acquisition*,
298 Ga. App. 6 (2009) ............................................................. 4

*Phillips v. Selecto Scientific*,
308 Ga. App. 412 (2011) ............................................................. 4

*Powers v. Hamilton Cnty. Pub. Def. Comm'n*,
501 F.3d 592 (6th Cir. 2007) ............................................................. 3

*Prater v. Ohio Educ. Ass'n*,
2008 WL 2566364 (S.D. Ohio June 26, 2008) ............................................................. 3

*Rikos v. Procter & Gamble Co.*,
799 F.3d 497 (6th Cir. 2015) ............................................................. 2, 18, 20, 23

*Rodriguez v. GEICO Gen. Ins. Co.*,
2021 WL 1056264 (M.D. Fla. Feb. 4, 2021) ............................................................. 25

*Sandusky Wellness Ctr. v. ASD Specialty Healthcare, Inc.*,
863 F.3d 460 (6th Cir. 2017) ............................................................. 11, 13

*Saunders v. Dyck O'Neal, Inc.*,
2023 WL 6390564 (W.D.Mich. Mar. 15, 2023) ............................................................. 7

*Saunders v. Dyck O'Neal, Inc.*,
319 F.Supp.3d 907 (W.D.Mich. 2018) ............................................................. 7

*Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*,
279 F.R.D. 442 (N.D. Ohio 2012) ............................................................. 20

*Solo v. United Parcel Serv. Co.*,
947 F.3d 968 (6th Cir. 2020) ............................................................. 5

*Spurlark v. Dimension Serv. Corp.*,
2022 WL 2528098 (S.D. Ohio July 7, 2022) ............................................................. 34

*Taylor v. City of Saginaw*,
2022 WL 385641 (E.D.Mich. Feb. 8, 2022) ............................................................. 16

*Tennille v. W. Union Co.*,
785 F.3d 422 (10th Cir. 2015) ............................................................. 18

*United States v. Lang*,
717 F. App'x 523 (6th Cir. 2017) ............................................................. 15

*Vance v. DirecTV, LLC*,
2022 WL 3044653 (N.D.W. Va. Aug. 1, 2022) ............................................................. 19

*Wesley v. Snap Fin. LLC,*
  339 F.R.D. 277 (D. Utah 2021) ............................................................. 19

*West v. Cal. Servs. Bureau, Inc.,*
  323 F.R.D. 295 (N.D. Cal. 2017) ........................................................... 19

*Whitaker v. Bennett L., PLLC,*
  2015 WL 12434306 (S.D. Cal. Jan. 26, 2015) ....................................... 26

*Wilson v. Badcock Home Furniture,*
  329 F.R.D. 454 (M.D. Fla. 2018) .......................................................... 11

*Wirth v. CACH,*
  300 Ga. App. 488 (2009) ......................................................................... 4

*Young v. Nationwide Mut. Ins. Co.,*
  693 F.3d 532 (6th Cir.2012) ........................................................... 10, 25

*Zyburo v. NCSPlus, Inc.,*
  44 F. Supp. 3d 500 (S.D.N.Y. 2014) ..................................................... 23

## Statutes

47 U.S.C. § 227(b)(3) ................................................................................ 10

## Other Authorities

Black's Law Dictionary (11th ed. 2019) .................................................... 28

*In re Dish Network, LLC,*
  28 FCC Rcd. 6574 (2013) ........................................................... 26, 28, 31

*In re TCPA,*
  23 FCC Rcd. 559 (2008) ................................................................... 21, 23

*In re TCPA,*
  30 FCC Rcd. 7961, 7990 (2015) ............................................................ 21

Rest. (2d) of Torts § 877 ........................................................................... 27

Rest. (3d) of Agency § 1.01 ....................................................................... 29

Rest. (3d) of Agency § 1.02 ....................................................................... 30

Rest. (3d) of Agency § 2.03 .................................................................. 30, 32

Rest. (3d) of Agency § 4.01 .................................................................. 32, 33

Rest. (3d) of Agency § 7.04 ..................................................................................... 27

## **Rules**

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................... 16

Fed.R.Civ.P. 23(a) .................................................................................................. 25

Fed.R.Civ.P. 23(a)(2) ............................................................................................... 3

Fed.R.Civ.P. 23(a)(4) ............................................................................................... 6

Fed.R.Civ.P. 23(b)(3) ............................................................................................ 25

Fed.R.Civ.P. 23(c)(2) ...................................................................................... 13, 16

Fed.R.Civ.P. 23(c)(2)(B) ................................................................................. 12, 18

Fed.R.Civ.P. 23(e)(1) ............................................................................................. 12

Fed.R.Civ.P. 23(g) .................................................................................................... 6

Fed.R.Civ.P. 26(a)(2)(B)(ii) ................................................................................... 15

Fed.R.Evid. 1006 ...................................................................................................... 9

DONI spends its class certification opposition pontificating on hypotheticals and processes, and ignoring facts and evidence. It devotes pages musing about the inaccuracy of its own records and how difficult it was for it to cull and analyze them, how its employees may have made mistakes in flagging consent, and how Plaintiff's data analysis is flawed. These challenges ring hollow in light of the fact that Plaintiff provided DONI with the *list* of nonconsensual VoApps Direct Drops within the parties' agreed-upon, Court-approved sample, and that DONI failed to identify a single call therein that it alleges was consensual. In other words, Plaintiff "showed her work," and DONI was unable to identify any incorrect or otherwise problematic results.

Nor can it: The parties agree that consent happens when the consumer provides her phone number to the creditor with regard to a particular account, and the records DONI produced show if and when a consumer provided her cell number to DONI or the creditor. A determination of whether DONI had consent is simple: Plaintiff's data witness culled the data, and determined which VoApps calls DONI made where there was no prior instance of the cell number appearing in the records. Although substantially upgraded and automated, DONI's own 2018 consent analysis *itself* provided the blueprint for Plaintiff's consent analysis. DONI cannot fairly perform a consent analysis in 2018, and then argue that Plaintiff's similar analysis in 2020 is improper.

And although DONI attacks ascertainability, predominance, and superiority, it fails to distinguish, analyze or *cite* two seminal cases out of the Sixth Circuit on that point, which were discussed prominently in Plaintiff's opening brief and support certification here: *Bridging Cmtys. Inc. v. Top Flite Fin. Inc*., 843 F.3d 1159 (6th Cir. 2016) (reversing denial of class certification), and *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc*., 757 F.3d 540 (6th Cir. 2014).

The "mere mention of a defense is not enough to defeat predominance"; a TCPA

1

defendant that wishes to assert consent must cite to substance, rather than use "consent" as a hypothetical shield to certification as DONI attempts here. *See Bridging Cmtys.*, 843 F.3d at 1126. DONI's other arguments, too, are devoid of substance and designed to distract from the merits and evidence. Indeed, DONI does not even begin to address why class members should not be entitled to the benefit of the Court's prior ruling that VoApps is covered by the TCPA.

The Court should certify, and enter summary judgment for Plaintiff and the class.

## I.   **CLASS CERTIFICATION SHOULD BE GRANTED.**

### A.   **The Class Is Ascertainable.**

To satisfy ascertainability, the Sixth Circuit requires that a class definition be clearly defined in reference to objective criteria. *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015). Plaintiff's proposed class definition is:

> All persons to whom one or more VoApps messages was successfully delivered to their cellular telephone number from Dyck O'Neal, where Dyck O'Neal's records contain no reference to the consumer providing such number to the creditor or Dyck O'Neal before such direct drop.

There is no subjective element to this definition: Either DONI successful delivered a VoApps message to a class member's cell number, or it did not. Likewise, with regard to consent: Either the phone number was provided by the call recipient in connection with the alleged debt being collected – in which case DONI's record would reflect this – or it was not, in which case the person is a class member. *See* pp. 22-25, *infra*. The Court should find that this uncontroverted prerequisite for class certification is satisfied.

### B.   **The Rule 23(a) Requirements Are Satisfied.**

#### 1.   **Numerosity**

DONI does not challenge numerosity, and it does not challenge Plaintiff's proffer that there are approximately 12,048 unique cell numbers, based on the parties' agreed sample, to

which DONI sent successful VoApps messages without consent. <u>Ex. 1</u>, Hansen Rep. ¶ 27. The Court should find that this uncontested class certification element is satisfied.

### 2.    Commonality

Commonality is satisfied if "there is a single factual or legal question common to the entire class." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). This case presents both common legal and factual issues. The common legal issue – which has already been decided in Plaintiff's favor – is whether DONI's ringless voicemails fall under the TCPA's prohibition against calling cell numbers using an artificial or prerecorded voice. ECF No. 143 at PageID.1412. The class definition ensures that Plaintiff and the class members share the most important factual issue, too: Everyone in the class received the messages that Judge Quist ruled were covered by the TCPA. DONI does not dispute the above, and offers no reason why the class members should not benefit from this favorable ruling. As such, a question of law or fact common to the class exists, and Plaintiff satisfies Fed.R.Civ.P. 23(a)(2)'s "low hurdle." *Ladd v. Nashville Booting, LLC*, 2023 WL 3400485, at *6 (M.D. Tenn. May 11, 2023).

### 3.    Typicality

"[T]ypicality is not an onerous requirement. If there exists a strong similarity of legal theories, factual distinctions between proposed class representatives and class members will not defeat class certification." *Prater v. Ohio Educ. Ass'n*, 2008 WL 2566364, at *3 (S.D. Ohio June 26, 2008) (citing *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884-85 (6th Cir. 1997)).

Plaintiff's claims are typical of the class members' because DONI treated Plaintiff and each class member the same way with regard to the challenged communications: It called Plaintiff and each class member's cell number and left a prerecorded, ringless voicemail message. The liability-creating experience for all such claims is identical.

DONI argues that it has an arbitration defense to claims of class members whose calls were designed to collect alleged Purchasing Power debts that is unique to those potential class members. Thus, according to DONI, Purchasing Power call recipients are not typical of folks like Saunders, from whom it was attempting to collect other types of debt. However, "arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *Dottore v. Huntington Nat. Bank*, 480 F. App'x 351, 352 (6th Cir. 2012). Arbitration motions are to be decided on a standard that "mirrors" the familiar summary judgment standard, and must be supported by admissible evidence. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). DONI submits <u>no</u> admissible evidence in support of its position: no deposition testimony, no declaration, and *no contract*. What is more, DONI's Fed.R.Civ.P. 30(b)(6) deponent testified that DONI bought the Purchasing Power debt from an unidentified "middle man," and knows nothing about the origin, completeness, or correctness of the data it purchased.  <u>Ex. 3</u>, Resch Dep. at 49-53.

DONI cannot assert arbitration rights derived from a contract it purchased from some unknown party,[1] where DONI was not a party to the contract, which it did not attach or

---

[1]    An "assignment is a contract and, in order to be valid, must possess the same requisites (parties, subject matter, mutual assent, consideration) as any other contract." *Bank of Cave Spring v. Gold Kist, Inc.*, 173 Ga. App. 679, 680 (1985). An assignment must be in writing, identify both the assignor and assignee, and identify the specific accounts transferred in order for the contractual right to be enforceable by the assignee. *Nyankojo v. North Star Capital Acquisition*, 298 Ga. App. 6 (2009). A party may not rely on testimony alone without providing the written agreements which could complete the chain of assignments between the assignor and the purported assignee. *Wirth v. CACH*, 300 Ga. App. 488 (2009); *Hurst v. Monitronics Int'l, Inc.*, 2016 WL 523385, at *1 (N.D. Ga. Feb. 10, 2016), *aff'd on other grounds*, 682 F. App'x 743 (11th Cir. 2017). Cases supporting this hard-and-fast rule abound. *Arrow Fin. Servs., LLC v. Wright*, 311 Ga. App. 319, 321-22 (Ga. App. 2011); *Benson v. Asset Acceptance, LLC*, 310 Ga. App. 1 (2011) (no evidence of assignment between Citibank USA, N.A. and Citibank (South Dakota), N.A.); *Green v. Cavalry Portfolio Servs., LLC*, 305 Ga. App. 843 (2010); *Phillips v. Selecto Scientific*, 308 Ga. App. 412, 413-14 (2011) (refusing to enforce assignment not in

4

authenticate, where DONI has no idea about the truth or accuracy of the data it allegedly has. DONI does not purport to be a party to the alleged contract it seeks to enforce, and it has not attached any sort of assignment to establish it has the right to do so.

DONI has also waived any arbitration-related argument. "Because a valid arbitration provision avoids court process, courts resolve arbitration disputes with dispatch…. But the benefits of 'efficient and speedy' arbitration are lost if a party seeks arbitration only after insisting upon court process." *Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 974-75 (6th Cir. 2020). Courts "may find waiver if a party (1) takes actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delays its assertion to such an extent that the opposing party incurs actual prejudice." *Id*. DONI litigated this case *for years* without once mentioning arbitration: It did not raise arbitration in its Answer or Affirmative Defenses, ECF No. 6 at PageID.31, DONI did not raise arbitration in response to any of Plaintiff's discovery requests (including Interrogatory No. 10, which directly asked DONI to explain its affirmative defenses), Ex. 21, and DONI did not raise arbitration anyplace else in its prior two summary judgment motions or any kind of discovery disclosures. This case thus presents the quintessential waiver, and justice requires refusing to permit DONI to use arbitration as a shield to class certification. *E.g. Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713, 718 (6th Cir. 2012) ("The filing of an answer is, after all, the main opportunity for a defendant to give notice of potentially dispositive issues to the plaintiff; and the intent to invoke an arbitration provision is just such an issue."); *Manasher v. NECC Telecom*, 310 F. App'x 804, 806 (6th Cir. 2009)

---

writing); *In Re UPL Advisory Opinion 2002-1*, 277 Ga. 521 (2004) (instructing trial courts to "closely examine the interests conveyed by a purported transfer" when a party asserts itself to be an assignee); *Hutto v. CACV*, 308 Ga. App. 469 (2011) (no evidence of assignment between Chase Manhattan Bank and JP Morgan Chase & Co.).

(class action defendant "waived whatever right to arbitrate it may have had by failing to plead arbitration as an affirmative defense and by actively participating in litigation for almost a year without asserting that it had a right to arbitration.").

Plaintiff has been prejudiced by DONI's arbitration-related omissions. Had DONI timely raised arbitration, Plaintiff would have taken discovery on the issue, perhaps deposing Purchasing Power and/or the unnamed intermediary(ies) through whom DONI obtained the PP files. Plaintiff might have engaged an expert to analyze or testify on the (un)conscionability of the contract or contracting process. DONI's failure to timely disclose arbitration as a potential defense until the Court ruled on several summary judgment motions and after the close of fact discovery renders it an impermissible surprise, precluding its introduction now.

### 4.     Adequacy.

Other than to attack her typicality because of the faux-arbitration issue addressed above, DONI does not challenge Plaintiff's adequacy as a class representative. And DONI does not challenge counsel's qualifications or ability to bring this case to conclusion in favor of the class. Because DONI does not otherwise dispute Plaintiff's or her counsel's adequacy to represent the Class, the Court should find Fed.R.Civ.P. 23(a)(4) and 23(g) satisfied.

### C.     Rule 23(b)(3) Is Satisfied.

The crux of DONI's opposition to class certification seems to rest on predominance and superiority, based on purported individualized issues of "standing" and consent. DONI also unpersuasively argues that this case presents manageability difficulties in identifying the class. None of these arguments have merit, and Plaintiff's motion should be granted.

### 1.     The prerecorded Direct Drop voicemails at issue intruded upon each class member's seclusion, invaded their privacy, and trespassed upon their chattels in violation of the TCPA.

DONI's standing-based predominance argument ignores that – at its request – the Court has *already determined* that people who receive DONI's VoApps calls have Article III standing to sue under the TCPA:

> Plaintiff has Article III standing. First, her injury is directly traceable to Defendant's illegal calling. Second, Plaintiff's injury bears a close relationship to the underlying harm of common law torts such as invasion of privacy, intrusion upon seclusion, and trespass to chattels. Plaintiff's harm, caused by Defendant's robocall voicemails, is "the same kind of harm that common law courts recognize – a concrete harm that Congress has chosen to make legally cognizable." *Gadelhak*, 950 F.3d at 463.

*Saunders v. Dyck O'Neal, Inc.*, 2023 WL 6390564, at *4 (W.D.Mich. Mar. 15, 2023) (ECF No. 242 at PageID.3134); *see also Saunders v. Dyck O'Neal, Inc.*, 319 F.Supp.3d 907, 911-12 (W.D.Mich. 2018) (Quist, J., holding that DONI's calls are "precisely" the kind of harm the TCPA was designed to prevent) (ECF No. 50 at PageID.504).

The rulings in this case were prescient: In June 2023, the Sixth Circuit considered the exact same issues in *Dickson v. Direct Energy, LLC*, 69 F.4th 338 (6th Cir. 2023). *Dickson* roundly rejected DONI's argument that there must be an individual inquiry into how a ringless voicemail affected each recipient to assess that person's constitutional standing:

> Here, [Defendant] placed an unsolicited call to [Plaintiff's] phone (the [Ringless Voice Mail]) to publicize its services, interjecting itself into [Plaintiff's] private sphere. This implicates [Plaintiff's] common-law right to seclusion—that is, his right to be left alone from others, including by means of telephonic communications. *Id.* §§ 652A, 652B. From a lay perspective, we can see why members of the public and Congress, through the TCPA, deemed such calls intrusive. Pub. L. 102-243 § 2, ¶¶ 5–6, 10, 12.
>
> For example, some consider their phone number a matter of private information in and of itself. People commonly exercise discretion in publicizing their phone numbers, entrusting them only to their circle of friends, family, and select others on an as-needed basis. It follows that they may not wish for strangers or unfamiliar businesses to directly reach their personal phone lines.
>
> In addition, phone numbers are relatively fixed and attached to the individual. In the ordinary course of things, they are seldom changed—which could make it

difficult to evade unwanted communications once one's phone number is discovered. And finally, receipt of unwanted voicemails (for example) to a personal telephone also undermines a sense of privacy, because being prompted to consider such messages for review and then disposal is disruptive of one's personal time—particularly given that the recipient might forever be prompted to do so until it is done. In these ways and others, telephones are logically part of one's private domain to which the right to be left alone extends. *See* Restatement § 652A cmt. a.
****
Intrusion upon occurs when someone "intrudes into a private place." Such an invasion of privacy can occur even when the victim is physically present in a public place. … And cell phones are, by their nature, private – regardless of whether they are carried in public places.

*Id*. at 345-46, 347. Just as in *Dickson*, here each class member's seclusion was illegally invaded, regardless of what they were doing or how they felt when they received such calls. There is no subjective, individualized inquiry (such as whether recipients "wanted" to receive DONI's calls) necessary to assess Constitutional standing; each class member suffered the same intrusion upon seclusion injury,[2] and Article III standing is satisfied.[3] [4]

DONI also argues that there are individualized issues concerning "prior express consent" that preclude certification. However, as a matter of policy and practice, DONI *kept track of*

---

[2]    As this Court observed, TCPA violations are akin to the common law tort of trespass to chattels, as well. ECF No. 242 at PageID.3134; *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 779 (N.D.W. Va. 2017) ("Even if the consumer does not answer the call or hear the ring tone, the mere invasion of the consumer's electronic device can be considered a trespass to chattels, just as 'plac[ing a] foot on another's property' is trespass."). This trespass by DONI similarly occurred onto each class member's cellular voicemail, regardless of any subjective assessment.

[3]    DONI's failure to cite *Dickson* is inexcusable, and its insistence that there exists no standing for folks who received its messages in the face of this controlling adverse authority is vexatious and serves to unnecessarily multiply these proceedings.

[4]    DONI's suggestion that the Court should "infer" that some hypothetical number of class members might have *wanted* its nonconsensual, prerecorded debt collection messages is the kind of self-serving speculation the Sixth Circuit has held impermissible. *Bridging Cmtys. Inc.*, 843 F.3d at 1125. DONI also misconstrues Article III standing, which focuses on whether the harm incurred was of a "kind" similar to that traditionally actionable under common law. There is no constitutional or statutory requirement that TCPA violations be subjectively unwanted. *Dickson*, 69 F.4th at 346; 47 U.S.C. § 227(b)(1)(A)(iii). Moreover, to the extent that class members do not wish to participate in the class action, they may opt out.

whether it had consent to call cell phones; records it ignored when making the calls at issue based on the incorrect belief that the TCPA did not apply. Ex. 3, Resch Dep. at 10-13. Plaintiff employed a data analyst to tabulate instances a phone number was provided within DONI's records only because DONI self-servingly claims that its internal "consent" tracking may not be correct. Plaintiff's data witness created a scalable, automated process to consider *all* the documents and data DONI produced in discovery pertaining to consent, and tabulate every instance where a phone number was provided to DONI or the creditor. Ex. 1, Hansen Rep. ¶¶ 23, 28. Each and every record where there was a possible "consent"-related event before a Direct Drop was eliminated from the dataset as a call to a non-class member. *Id.* ¶ 20.

DONI's speculation that there *might* be something someplace that *might* bear upon consent is unpersuasive in light of the fact that it has not identified a single record within Plaintiff's proposed class, where it contends the proffered class member consented. The Court should reject DONI's attempt to defeat certification by claiming there are hypothetical "individual issues," an approach that was rejected in *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016). A TCPA defendant seeking to avoid certification based upon purported individual issues of consent must present *admissible evidence* that *substantiates* such. *Id*. DONI's argument also runs directly contrary to the parties' agreed discovery protocol, which Magistrate Judge Kent entered on April 22, 2019, which estops such arguments. ECF No. 88, Order ¶ 3 (PageID.755).

The bottom line is that, although DONI has had Plaintiff's class member tabulation – submitted as both a Fed.R.Evid. 1006 and expert opinion – since December 20, 2019, it has failed to identify any errors in the tabulation's result. Moreover, there are no individualized Article III standing issues because, by definition, each class member incurred a nonconsensual

call that binding Circuit authority holds is sufficient for Article III standing.

> **2.    DONI's assertions about the purported difficult in identifying class members are untested, meritless, and contradict settled law.**

In *American Copper & Brass, Inc. v. Lake City Indus.Prods., Inc.*, 757 F.3d 540 (6th Cir. 2014), cited in Plaintiff's opening brief and wholly ignored by DONI, the Sixth Circuit found that a list of phone numbers that received TCPA-covered communications was sufficient for ascertainability purposes:

> [Defendant argues] that the class is not objectively ascertainable … [However] the record in fact demonstrates that the fax numbers are objective data satisfying the ascertainability requirement. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir.2012) (determining class membership "by reference to objective criteria"); *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir.2008) (commenting that notice to class members need not be perfect, but simply "the best notice that is practicable under the circumstances").

757 F.3d at 544-45 (affirming class certification). Just as in *American Copper*, . Ex. 5, Gies Dep. at 54. *American Copper* is thus indistinguishable from this case.[5] *Id.* at 30; Dkt. 36-6 at p. 2 (                                                        ); *see also* Ex. 12 (Plaintiff-specific DONI account records with VoApps calls highlighted). And as in *American Copper*, which was brought pursuant to the same statutory paragraph conveying a private right of action as this case – 47 U.S.C. § 227(b)(3) – anyone who

---

[5]    DONI's citation in footnote 1 of its brief to *Innovative Acct. Sols., Inc. v. Credit Process Advisors, Inc.*, 335 F.R.D. 106, 114 (W.D. Mich. 2020), for the proposition that the "best objective indicator of the 'recipient' of a fax is the person who subscribes to the fax number" supports Plaintiff's position. That court granted certification, noting that – as in this case – "a fax log showing successful transmissions to particular fax numbers is sufficient to 'make the recipient clearly ascertainable.'" *Id.* It also held that, "to the extent [it] must identify the individuals or entities associated with the fax numbers in order to provide notice or relief to class members, there are mechanisms available for doing so[,]" such as a claims administration process. *Id.* There is no reason why a similar process cannot be deployed here.

received DONI's prerecorded messages has standing to sue.

*Sandusky Wellness Ctr. v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460 (6th Cir. 2017), cited by DONI, says nothing different. In *Sandusky Wellness* the Sixth Circuit affirmed denial of class certification because (a) there were no transmission logs, and (b) the defendant provided evidence that at least 25% of the class had no statutory standing to sue because they consented to receive the subject communications. DONI's only other in-Circuit authority on this point, *APB Associates, Inc. v. Bronco's Saloon, Inc.*, 297 F.R.D. 302 (E.D. Mich. 2013), was reversed upon reconsideration based upon *American Copper's* reference to fax logs; because the plaintiff in *Bronco's Saloon* proffered fax logs, the class was objectively identifiable and certification was granted. Similarly in this case, VoApps and DONI produced their transmission logs, and DONI has not identified a single proposed class member whom it contends consented. *Accord Krakauer v. Dish Network, LLC*, 925 F.3d 643, 658 (4th Cir. 2019) (finding class members could "be identified on a large-scale basis, and notified of the class action accordingly," where call records "clearly showed when calls were placed and whether the call went through").[6]

Additionally, DONI's suggestion that Plaintiff will not be able to identify the person associated with the phone number called because of turnover in phone number ownership over the past seven years does not make any sense. It does not matter if a phone number was reassigned to someone else after DONI called it: DONI's records reflect the name and address of

---

[6]     DONI argues that *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 460 (M.D. Fla. 2018), prevents certification. However, *Wilson* alleged a class of persons who received the defendant's calls *in error*, only; a so-called "wrong number" class. The parties did not have the benefit of the defendant's records as they do here. Moreover, Plaintiff has demonstrated a scalable process that has identified 396 class members from the parties' agreed, 905-account sample. Ex. 1, Hansen Rep. ¶ 23. *Wilson* also directly contradicts *American Copper*, which held that a call log on its own is sufficiently definite for identifying the class, and acknowledged that any recipient or owner of the phone number can have standing, not just the authorized user.

the person associated with the phone number at the time it made the call. Ex. 15 (class contact information from sample). The Court should also reject this argument because any delay in this case was not Plaintiff's fault: In fact, Plaintiff timely moved for class certification in 2020, Dkt. 144, which was subsequently denied without prejudice to allow prolonged motion practice concerning Article III standing at DONI's insistence. ECF No. 202 (PageID.2895), 210 (PageID.2922), 242 (PageID.3134). Respectfully, the Court should not in fairness reward DONI's delay efforts by denying Plaintiff and the class relief based upon the age of this case.

DONI relies heavily on the report of Jan Kostyun to argue that the class should not be certified because it may be difficult to find class members. However, the Sixth Circuit instructs that identifying class members is not necessary for certification – *or adjudication* – of a class action:

> Pursuant to Federal Rule of Civil Procedure 23(e)(1), a district court, when approving a class action settlement, "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Additionally, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2)(B).

> The Due Process Clause, moreover, gives unnamed class members the right to notice of the settlement of a class action. *DeJulius*, 429 F.3d at 943–44 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

> To comport with the requirements of due process, notice must be "reasonably calculated to reach interested parties." *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir.2005) (quoting *Mullane*, 339 U.S. at 318–20, 70 S.Ct. 652); *see also DeJulius*, 429 F.3d at 944.

> Due process does not, however, require actual notice to each party intended to be bound by the adjudication of a representative action.

*Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008) (paragraph breaks supplied).[7] So while there exists a duty to provide the "best notice that is practicable under the circumstances," there is no requirement to identify class members for certification, and there is also no requirement to identify all class members when a certified class goes to judgment. *Id*.

But because we have a list of phone numbers called, and names and addresses for call recipients, this case does not present anything close to the notice problems in some antitrust,[8] products liability,[9] or complex securities class actions.[10] And even if some of that data is stale as DONI suggests, the proper path is to provide the "best notice that is practicable under the circumstances" rather than refuse to certify. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015); *cf. Sandusky Wellness Center, LLC*, 863 F.3d at 473 (affirming denial of class certification where no transmission logs existed).

Aside from the above, Kostyun's opinions are deficient because:

(1)    Kostyun has zero relevant qualifications. His report fails to articulate any training, experience, or expertise in skip-tracing, class action administration, or other relevant, real-world activity that might qualify him to opine as an expert on the viability of using third-party data sources to identify a class. Ex. 18, Kostyun Rep. ¶ 6 (explaining his experience focused on "the field of telephone number portability"—which is not relevant here or to his opinion) & pp. 35-39

---

[7]    Although *Fidel v. Farley* was in a class action settlement posture, the standard for notice of a class action rests in Fed.R.Civ.P. 23(c)(2), regardless of whether the Court has certified a settlement or litigation class.

[8]    *In re SE Milk Antitrust Litig.*, 2012 WL 2050865, at *2 (E.D.Tenn. 2012) (finding, in antitrust case, that publication notice "was the best notice practicable under the circumstances, complied with Rule 23, and satisfied the constitutional requirement of due process").

[9]    *In re Skechers Toning Shoe Products Liability Litig.*, 2012 WL 3312668, at *12 (W.D.Ky. 2012) (approving notice plan comprised of: "direct mailing, hard copy or print advertising, and electronic distribution through various websites and social media facilities."

[10]    *Fidel*, 534 F.3d at 514 (approving process that sent notice to brokerage houses, as individual class members could not be identified).

(work experience limited to telecommunications field prior to starting litigation consulting

business); *see also* ECF No. 253-1 pp. 6-7. Kostyun's only direct experience using reverse

lookup service LexisNexis, for example, is that he ran a search on himself – once – in 2018. *Id.*

And running the equivalent of a Google search on his daughter-in-law five years ago does not

make Kostyun a reliable expert, either. *Id.* A person who has never in his life attempted to

identify a class from call records cannot reliably opine about how feasible it would be to do so.

        (2)    <u>Kostyun's "methodology" is unreliable.</u> Kostyun did not review, analyze – or *look*

*at* – <u>*any*</u> of VoApps' or DONI's data in this case, let alone Plaintiff's expert's report and results

that specifically identified class members from the parties' agreed sample. Ex. 18, Kostyun Rep.

¶ 13 (identifying documents reviewed).[11] This failure to consider the facts and data of this case

alone makes his "methodology" (if you can call it that) unreliable. *Newell Rubbermaid, Inc. v.*

*Raymond Corp.*, 676 F.3d 521, 528-29 (6th Cir. 2012) (affirming exclusion of expert where "the

district court identified at least four red flags in [his] methodology: anecdotal evidence, improper

extrapolation, failure to consider other possible causes, and, significantly, a lack of testing").

        Kostyun's analysis is dilettante, uninformed, and arbitrary. He relies on an *ad hoc* 2018

LexisNexis report he ran on himself for a prior case and some old internet searches he ran on his

daughter-in-law through Spokeo and other unspecified websites, self-serving conjecture derived

from piecemeal information he found online about possible inaccuracies with data vendors or

cell carriers, the unsurprising fact that three data providers he found have disclaimers in their

online terms and conditions, and unsupported anecdotes from other cases,[12] without any

---

[11]    Page 19 of Plaintiff's opening brief has a typo in it, and mentions "Hossfeld" instead of
"Hansen" in reference to her expert's report. Plaintiff apologizes for this scrivener's error.
[12]    Kostyun relies heavily on his own expert reports in other cases as "proof" of the
correctness of his position—in reference to *other* cases' data, parties, and vendors that don't

consideration as to whether – or how – these sources apply to this case. Ex. 18, Kostyun Rep. ¶¶ 20.B, 20.E-F, 22-25, 32, 36, 43-44. This is not expert work: anyone with an internet connection can do what Kostyun did. The Court should afford no weight to Kostyun's report.

(3)    Kostyun's conclusion is irrelevant. DONI's records include class member name and addresses. Had Kostyun reviewed his client's underlying data,[13] he would have realized this. Ex. 15 (class contact information from parties' agreed sample). Reverse-lookups or carrier subpoenas, to the extent they are to be utilized at all, will therefore merely supplement DONI's already-existing, robust business records. Because Kostyun failed to consider the nature or completeness of the data relevant *to this case*, Kostyun's opinion is irrelevant.[14]

**3.    The class poses no manageability concerns.**

DONI's suggestion that "the proposed class would also be unmanageable" is made without citation to any case law or analysis, whatsoever; it is based entirely on the self-serving speculation of defense counsel and ostensibly its proffered expert, Jan Kostyun, who admittedly

---

matter here, for which he failed to provide the underlying data in violation of Fed.R.Civ.P. 26(a)(2)(B)(ii). Ex. 18, Kostyun Rep. ¶¶ 20.C, 20.F-H, 29, 33, 35, 39, 48-50. But Kostyun's belief that his prior opinion was correct is not a valid basis for an expert opinion—nor does it somehow gain credibility by him simply cutting-and-pasting verbatim from prior reports. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) ("[N]othing … requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

[13]    The only account document Kostyun reviewed at all was a single promissory note cherry-picked for him by defense counsel—along with a write-up suggesting to him what his opinion should be. Ex. 18, Kostyun Rep. at Ex. E. "[C]herry-picking data is just as bad as omitting it or making it up altogether." *United States v. Lang*, 717 F. App'x 523, 536 (6th Cir. 2017).

[14]    Kostyun's report also opines that determining which call recipients consented "will require individualized investigation and analysis," based on cutting-and-pasting DONI's COO's testimony. Ex. 18, Kostyun Rep. ¶¶ 52-56. An expert who merely parrots his client's arguments is not qualified. *EPAC Techs., Inc. v. Harpercollins Christian Publ'g, Inc.*, 2019 WL 109371, at *25 (M.D. Tenn. Jan. 4, 2019) (citing decision holding "[a]n expert may not offer testimony that simply regurgitates what a party has told him or constructs a factual narrative based on record evidence"); *Ash Grove Cement Co. v. Employers Ins.*, 246 F.R.D. 656, 661 (D. Kan. 2007) (expert "may not simply parrot or recite the opinions and knowledge of other expert and fact witnesses"). This is doubly true here, where Kostyun did not even look at the underlying data.

*did not review* Plaintiff's expert's report or his own client's class data.

DONI's argument that class certification should be denied because class members might be "difficult to contact or locate" should be rejected for several reasons. First, notice need not be perfect; it needs to be the best notice practicable under the circumstances. Fed.R.Civ.P. 23(c)(2). Indeed, Rule 23 specifically contemplates that individual notice may not be practicable in every case, and endorses using alternative means if finding names and addresses cannot be done with "reasonable effort." *Id*. Rather than deny class certification for lack of individual addresses as DONI urges, Rule 23 requires that notice be the best practicable, which in many cases includes publication notice. *E.g., Taylor v. City of Saginaw*, 2022 WL 385641, at *3 (E.D.Mich. Feb. 8, 2022) (directing individual notice to class members for which the parties had addresses, and publication notice to capture class members for whom the parties lacked addresses).

Nor does due process present any obstacle to certification. "Due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprise interested parties." *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 2007 WL 1455996, at *3 (N.D. Ohio May 15, 2007) (citation omitted). Rather, the court need only "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2)(B).

Notice to any small percentage (per the sample, roughly 12%) of class members for whom addresses might not readily exist in DONI's data can simply be handled through publication notice or direct notice after a reverse-lookup or carrier subpoena. *See Keim v. ADF MidAtlantic, LLC*, 328 F.R.D. 668, 678 (S.D. Fla. 2018) (certifying TCPA class, noting that "other courts have found subpoenas to phone carriers to be useful in obtaining historical

subscriber data") (citing cases); *LaVigne v. First Cmty. Bancshares, Inc.*, 330 F.R.D. 293, 296 (D.N.M. 2019) (approving notice plan in certified TCPA class action that intended to use historic phone number reverse-lookups to identify class members, over defense objection).[15] DONI's demand that the Court deny class certification because it thinks it might be "difficult" to contact some minority of class members, therefore, finds no support in the Rule or the law in this Circuit.

Second, DONI's suggestion that its data is not useful because many of its account records reflect "Mail returned – undeliverable" is misleading because DONI's records and testimony confirm that it regularly shores up those instances with a *new* address that does not result in returned mail. *See* Ex. 20, Resch Decl. ¶ 13 (Apr. 27, 2020) (DONI uses skip-tracing to "try to locate accurate addresses and phone numbers"); Ex. 22, Marovitch Decl. ¶ 5 & Ex. 23 (showing that 11 of the 17 accounts identified in Resch's April 27, 2020, declaration ultimately resulted in an address for which there was no subsequent old number or returned-mail indication).[16] Indeed, simple review of DONI's records reveals that 350 of the 396 total unique accounts from the parties' sample in which a nonconsensual, successful VoApps call was made (i.e., more than 88%) either: (a) don't have any reference to an old address or returned mail at all,[17] or (b) indicate that a different address was later mailed without a subsequent returned-mail indication. Ex. 22, Marovitch Decl. ¶ 3. Thus, DONI's "bad address" argument is entirely irrelevant to the

---

[15]    *See also* ECF No. 36-2, Snyder Rep. ¶¶ 104-113, 121 (discussing fact that "[r]eliable current contact information can be ascertained based solely on the telephone number called on the date the call was made").

[16]    The image in the April 27, 2020 Resch declaration, Ex. 20 ¶ 14, is not the same as the image pasted into page 18 of DONI's brief. Plaintiff does not know why. Moreover, the Resch declaration's spreadsheet contains some records that are outside the parties' agreed sample, precluding further review.

[17]    A full two-thirds of the 396 accounts Plaintiff's expert identified as having nonconsensual VoApps calls from the parties' sample – 264 accounts – were entirely devoid of any bad address or undeliverable-mail indications. Exhibit 21, Marovitch Decl. ¶ 4.

vast majority of accounts.

Third, DONI's response brief ignores "the well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Mullins*, 795 F.3d at 663; *Bridging Cmtys. Inc.*, 843 F.3d at 1126 (Sixth Circuit suggesting that, rather than deny certification, courts should use the "procedural mechanisms" in their toolbox to address possible class identification issues). Indeed, Sixth Circuit precedent squarely rejects attempts by defendants to use their supposedly poor recordkeeping as a reason to deny class certification, as DONI attempts here.[18] Fed.R.Civ.P. 23(c)(2)(B) requires the "best notice that is practicable under the circumstances"— it "does not [] require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Fidel*, 534 F.3d at 514.

Fourth, DONI's arguments fail because it ignores Plaintiff's actual notice plan. It does not matter whether some class members may have moved residences since living at the address DONI has for them because, as Plaintiff explained in her opening brief, she anticipates utilizing the U.S. Postal Service's Change of Address Database to ensure that notice is sent to the most recent address possible. *Tennille v. W. Union Co.*, 785 F.3d 422, 439 (10th Cir. 2015) ("We are

---

[18]     *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525-26 (6th Cir. 2015) ("[I]t is often the case that class action litigation grows out of systemic failures of administration, policy application, or records management that result in small monetary losses to large numbers of people. To allow that same systemic failure to defeat class certification would undermine the very purpose of class action remedies."); *see also Del Valle v. Glob. Exch. Vacation Club*, 320 F.R.D. 50, 61 (C.D. Cal. 2017) ("Class certification cannot be defeated by Defendants' poor record-keeping or failure to establish performance data reporting mechanisms with their third-party vendors. This would incentivize companies to not keep records, or not require that their vendors keep records, in an attempt to circumvent TCPA liability."); *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1150 (W.D. Mo. 2020) ("Defendants failed to retain the physical copies of the forms that they allege demonstrate the requisite prior express invitation or permission, and the Court will not deny class certification because Defendants now contend that an individual inquiry is necessary to corroborate that consent. To do so would 'create an incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct.'").

satisfied that the notice mailed to class members in this manner [(i.e., mailing to addresses updated using the NCOA database)] did not violate Rule 23 nor deprive the absent class of due process."). DONI also ignores that the name, address, and in some cases email address information it has for every single class member is far more than what exists in many TCPA cases that courts certify as class actions. *E.g., Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590, 601 (C.D. Cal. 2021) (overruling defendant's predominance objections in approving process to identify TCPA "wrong number" class through reverse-lookups and carrier subpoenas); *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277, 300 (D. Utah 2021) (similarly granting class certification in "wrong number" robodial case, in which notice plan consisted of "employing a reverse look-up strategy, and verifying the list through several databases"). This same reverse-lookup methodology can be used here to supplement DONI's already robust records as necessary, and can even be further bolstered by publication notice if the Court so desires. DONI fails to explain why this case differs from any of the other numerous class actions that have successfully employed similar notice plans where, like here, a call list existed.[19]

Finally, manageability is part of the Court's superiority consideration under Fed.R.Civ.P. 23(b)(3), and any purported manageability concerns about it being supposedly "difficult" to identify updated mailing addresses for class members must therefore be weighed against the

---

[19]     *E.g., Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 245 (D. Ariz. 2019) (granting class certification, suggesting use of reverse-lookups is "industry standard and is commonly used in TCPA cases"); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 302 (N.D. Cal. 2017) (granting class certification in TCPA case where reverse-lookups would be used to identify class members); *Vance v. DirecTV, LLC*, 2022 WL 3044653, at *5 (N.D.W. Va. Aug. 1, 2022) (same); *see also LaVigne v. First Cmty. Bancshares, Inc.*, 330 F.R.D. 293, 296 (D.N.M. 2019) (approving similar notice plan).

realistic alternative of denying class certification: Zero relief for any class member.[20] *See Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) (finding superiority met in certifying TCPA class action, citing "small amount" of possible individual recovery such that class members are "unlike to bring suit" individually); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the … wrongdoing that will go unpunished if class treatment is denied—to no litigation at all.").

Because a class action is the only way class members can possibly obtain redress for DONI's violations of their TCPA rights – including taking advantage of summary judgment that has already been determined in their favor – the Court should grant Plaintiff's motion. To preclude thousands of injured consumers from obtaining redress because a small percentage of their addresses in DONI's system might be outdated would "undermine the very purpose of class action remedies." *Rikos*, 799 F.3d at 525-26. As such, Defendant's arguments on this point should be rejected.

### 4. The Court should reject DONI's hypotheticals that consent evidence it never produced might nonetheless still exist.

DONI spends pages 19-22 of its brief arguing that the original creditors "might" have received consent to make the calls at issue. This argument does not hold water for several reasons and on several levels, delineated below.

<u>Supreme Court</u>. First, as the proponent of its "prior express consent" defense, DONI was charged with proffering evidence that supports it. *FTC v. Morton Salt Co.*, 334 U.S. 37, 44

---

[20]    DONI's response brief does not identify a single pending TCPA lawsuit against it for the VoApps calls at issue. This case is, therefore, the only way other affected individuals will receive any relief under the TCPA.

(1948).[21] DONI had the opportunity during discovery to try to obtain whatever records from creditors it wished, but elected not to do so. DONI does not challenge the proposition that it was required to come up with evidence supporting its alleged defense, and its speculation that maybe the creditors have consent evidence it failed to secure comes several years too late, since fact discovery closed in 2019. ECF No. 92 at PageID.763; *see Mullins*, 795 F.3d at 668 (discouraging courts from "effectively immuniz[ing] defendants from liability because they chose not to maintain records of the relevant transactions").

<u>Sixth Circuit</u>. Second, *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016), holds that a TCPA defendant that wishes to challenge class certification based upon consent must provide *evidence* of such. Hypothesizing about the possible existence of consent is not admissible. Plaintiff raised this point in her opening brief at page 16. DONI did not bother to distinguish, cite, or even mention this controlling authority.

<u>Judge Kent and DONI</u>. Third, as pointed out on page 16 of Plaintiff's opening brief, DONI agreed, and Magistrate Judge Kent ordered, that DONI "is estopped from making arguments in opposition to class certification or at trial that rely on or suggest the existence of data, information, or materials that are not timely produced to Plaintiff." <u>JSOF 9</u>; ECF No. 88 ¶ 3(b) (PageID.755). This bargained-for agreement was entered as a court-endorsed stipulation. *Id.*

This situation thus does not implicate due process at all, as DONI posits. DONI had nearly a year of class certification discovery – and a year before that during summary judgment proceedings – to marshal whatever evidence it wanted. And DONI did, in fact, produce data and

---

[21]    *See also Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017) ("Express consent is an affirmative defense on which the defendant bears the burden of proof.") (citing *In re TCPA*, 23 FCC Rcd. 559, 565 (2008)); *In re TCPA*, 30 FCC Rcd. 7961 (2015) ("the burden is on the caller to prove that it obtained the necessary prior express consent"), *set aside in part on other grounds in ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018).

documents, which Plaintiff integrated into her data analysis. *See* Ex. 1, Hansen Rep. ¶¶ 20(a)(i) and (ii); JSOF 8 ("DONI produced all call and consent-related data and records"). DONI's suggestion that there "might" be additional documents or data concerning consent for the class is thus impermissible. ECF No. 88, Order ¶ 3(b) (PageID.755). Estoppel was an express, negotiated term on which Plaintiff relied in agreeing to limit class discovery to a sample, and it would violate *Plaintiff's* rights to allow DONI to rely on or refer to hypothetical evidence it failed to secure or produce—and for which DONI has zero clue if it even exists. JSOF 9.

Plaintiff defined the class in terms that track the parties' agreement in ECF No. 88, Order ¶ 3(b) (PageID.755), and based upon binding Sixth Circuit and Supreme Court case law and FCC precedent. Given that stipulation, DONI cannot now argue that the absence of consent records precludes certification, or that it has somehow been deprived of its constitutional rights. *Bridging Cmtys. Inc.*, 843 F.3d at 1126. Respectfully, this Court cannot fairly deny class certification based on DONI's self-serving speculation about what hypothetical evidence "might" exist that it failed to secure or produce in the more than six years this case has been pending. *See Mullins*, 795 F.3d at 668 (discouraging courts from "effectively immuniz[ing] defendants from liability because they chose not to maintain records of the relevant transactions").

**5.    DONI's unsupported attacks on Plaintiff's expert are meritless.**

To the extent the Court is inclined to consider DONI's arguments that it "not credit" the report of Plaintiff's expert, Jeffrey Hansen, Plaintiff respectfully refers the Court to her briefing in opposition to DONI's prior motion to exclude Hansen's opinion and testimony, ECF No. 263, and incorporates such herein by reference.[22]

---

[22]    Magistrate Judge Kent denied the parties' respective motions to exclude each other's expert's opinions, and instead left it up to the Court to weigh the utility of their reports. ECF No. 268 at PageID.3605.

DONI's entire "individualized consent issues preclude certification" argument is a sham. DONI tracks whether it has purported consent to call phone numbers in the ordinary course. Ex. 3, Resch Dep. at 11 (confirming "Cell Phone Authorization" flag means "for that cell phone, we have affirmative consent"). Indeed, the TCPA rules *require* it to do so. *In re TCPA*, 23 FCC Rcd. 559, 565 (2008). Persons for whom there is any indicia they provided their phone number to DONI or the creditor are excluded from the class entirely. DONI's argument that this Court should deny redress to the class of people it robocalled without consent because some of its internal "consent" flags might be incorrect is an indefensible position that contradicts Sixth Circuit precedent. *See Rikos*, 799 F.3d at 525-26 ("[I]t is often the case that class action litigation grows out of systemic failures of administration, policy application, or records management that result in small monetary losses to large numbers of people. To allow that same systemic failure to defeat class certification would undermine the very purpose of class action remedies."). Indeed, to accept DONI's position would create the perverse incentive for other companies to keep intentionally inaccurate consent records, since doing so would allow them to violate the law with impunity. *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (granting class certification in TCPA case, noting "Defendant is in effect asking the Court to reward its imperfect record-keeping practices by precluding class certification").[23]

Plaintiff's expert, Jeffrey Hansen, developed a straightforward process to identify class members, which moots DONI's concerns about its own shoddy recordkeeping: Hansen took the "Cell Phone Authorization" flags in DONI's data, and applied them and the other indicia of

---

[23]    *See also Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 393 (M.D.N.C. 2015), *aff'd*, 925 F.3d 643 (4th Cir. 2019) ("If the Court were to deny certification because Dish does not keep an accurate list as the regulations require and Dish itself cannot identify which individuals on the list actually requested not to be called, it would create the perverse incentive for entities to keep poor records and to violate the TCPA's clear requirement that such a list be kept.").

purported consent DONI *itself* says can exist in its records, to exclude those calls from DONI's

list of successfully-delivered VoApps messages.[24] In this way, Hansen identified 1,513

successful VoApps calls to 396 unique cell numbers applicable to the class from the parties'

agreed, 905-account sample, where no prior record reflecting that the consumer provided their

phone number to DONI or the creditor (i.e., "consent") exists. Ex. 1, Hansen Rep. ¶ 23. Hansen's

analysis is almost entirely automated, and it is fully scalable to the rest of the class. *Id.* ¶ 28.

      DONI proffered no rebuttal expert, and despite having Hansen's report and the data

output of class members from the sample since January 2020, DONI has failed to identify any

flaw in Hansen's conclusions. Instead, DONI's response brief bizarrely cites its *own*, earlier

consent analysis—for a data set that was <u>not</u> a part of the parties' agreed sample, and which

Hansen consequently did <u>not</u> analyze—to argue that it might be hard to ascertain the class

because its employees found some instances where a purportedly consensual call was incorrectly

flagged in its system as "non-consent." This says nothing about *Hansen's* analysis, which was

purposefully as conservative as possible to capture all possible indicia of purported "consent."[25]

      DONI's conjecture that "manually reviewing all documents and data in DONI's files as

well as the documents and data in the creditors' files to determine if consent existed for each

---

[24]     A key aspect of Hansen's analysis was to remove subjectivity from the equation. DONI
identified certain ways in which "consent" may be reflected in its records, including: (1) the
original loan documents, <u>Ex. 3</u>, Resch Dep. at 23; (2) a "Cell Phone Authorization" flag in the
account notes, *Id.* at 11; (3) a "Cell Phone Consent FU" letter flag in the account notes (or the
physical document, itself), *Id.* at 16-17; (4) DONI's free-form account notes, themselves, *Id.* at
36; and (5) while duplicative of the account notes, call recordings, *Id.* at 16, 59 (noting DONI did
not incorporate call recordings in its own analysis). If the phone number appeared in any of these
instances, it was simply excluded from the final output of calls to the class.

[25]     In other words, even if DONI's system data reflects its belief that it lacks consent,
Hansen's process accounts for any possible instance in which DONI itself says the phone
number might nonetheless appear—such as on the initiating loan records. DONI has been unable
to identify any error in Hansen's result.

person receiving a message" will be required to identify class members is not supported by any evidence. First, Hansen's report confirms that his process was almost entirely automated, and can be fully automated, if necessary. Ex. 1, Hansen Rep. ¶¶ 20(e) n.7, 28. Second, even if this were not the case, the Sixth Circuit has explicitly held that "the size of a potential class and the need to review individual files to identify its members are not reasons to deny class certification." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012) ("[T]he need to manually review files is not dispositive. If it were, defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained.").[26] And finally, DONI's suggestion that this Court should deny class certification based on defense counsel's *ipse dixit* about how conveniently hard they think identifying class members will be directly contradicts binding Sixth Circuit precedent in *Bridging Communities Inc.*, 843 F.3d at 1125-126.[27]

Plaintiff has fully satisfied the requirements of Fed.R.Civ.P. 23(a) and 23(b)(3), and class certification should, therefore, be granted.

## II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR PLAINTIFF AND THE CLASS.

Plaintiff has asked that the Court grant summary judgment in her and the class members' favor, as to their claims under the TCPA. DONI does not dispute that "to prove that a defendant violated the TCPA in a case involving a cell phone, a plaintiff must establish that (1) the

---

[26]    Plaintiff thus opposes DONI's suggestion that the Court should pigeonhole one's ability to identify class members to only an automated search. For example, manually copying phone numbers from a limited batch of records into an Excel-type spreadsheet for use in data analysis would not be "unmanageable" on a class-wide basis or require so-called mini-trials; it is simple and objective clerical work.

[27]    *See also Rodriguez v. GEICO Gen. Ins. Co.*, 2021 WL 1056264, at *4 (M.D. Fla. Feb. 4, 2021) ("[T]he Court will not strike an expert based on the ipse dixit of counsel.").

defendant called his or her cell phone, and (2) the defendant did so using an [automatic telephone dialing system] or an artificial or prerecorded voice." *Whitaker v. Bennett L., PLLC*, 2015 WL 12434306, at *3 (S.D. Cal. Jan. 26, 2015) (citing 47 U.S.C. § 227(b)(1)(A)(iii)). DONI also does not dispute that it used VoApps to send Plaintiff's and each class member's cell number a prerecorded-voice call that is covered by the TCPA. What is more, DONI has not presented any evidence whatsoever in support of its affirmative defense of consent. The *prima facie* elements of the case are established for Plaintiff and the class, and – in the absence of opposition by DONI – the Court should enter summary judgment in the Plaintiff's/class's favor, finding that these elements have been established for each successful VoApps Direct Drop to a class member.

Instead of attacking the elements of the *prima facie* case, DONI argues that VoApps should be held liable instead of DONI, because in its view only VoApps' system "initiated" the calls—a position undermined by the fact that DONI dismissed its third-party complaint against VoApps for indemnification in 2018. ECF No. 73 at PageID.642; *see also* ECF No. 70, DONI Compl. ¶ 20 (conceding that "DONI" used VoApps' DirectDrop Service to deliver voicemail messages to Plaintiff and the class) (PageID.632).

The Court should enter summary judgment in the Plaintiff's/class's favor on the issue of whether DONI should be held liable for its Direct Drop voicemails, too. As explained in Plaintiff's opening brief – and not addressed in DONI's opposition – a person does not need to "press the button" for a call to be made to "initiate" a call. A person also "initiates" a call when they are "so involved in the placing of a specific telephone call as to be directly liable for initiating it" "by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example." *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 (2013).

This is exactly the case here: ███████████████████████████

███████████████████████████████████████ <u>Ex. 4</u>, VoApps Agr. ¶ 6. In other words, VoApps is no different than AT&T or Verizon, and DONI is the true caller. ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████. <u>JSOF 6</u>; <u>Ex. 5</u>, Gies Dep. at 9; <u>Ex. 7</u>, Britt Dep. at 16; <u>Ex. 6</u>, Schmidt Dep. at 18. This is not mere "clerical" work as DONI suggests; rather, it reflects DONI's complete involvement and control over the calling at issue, such that it should be held directly liable for it.

Perhaps even more fundamentally, however, DONI should be held directly liable for the calls to Plaintiff and the class because VoApps merely *did what DONI told it to do*. A party cannot avoid liability for a tort by directing someone else to "do the dirty work for them." This rule is memorialized in the Restatement of Torts.

A "person who orders or induces an actor's tortious conduct is subject to liability for harm resulting to a third person when the person 'knows or should know of circumstances that would make the conduct tortious if it were his own.'" Rest. (3d) of Agency § 7.04, *cmt. b*. This concept holds true "even when the relationship between two persons is ***not*** a relationship of agency." Rest. (3d) of Agency § 7.04, *cmt. b* (emphasis added). "When a person is subject to liability as a consequence of this rule, it is immaterial whether the relationship between the person and the actor is a relationship of agency" *Id*. (citing Rest. (2d) of Torts § 877, "Directing or Permitting Conduct of Another," which provides liability under substantially identical principles). The TCPA sounds in tort. Black's Law Dictionary defines "tort" as:

1. A civil wrong, other than breach of contract, for which a remedy may be obtained, usu. in the form of damages; a breach of a duty that the law imposes on persons who stand in a particular relation to one another …

█

2.  (pl.)The branch of law dealing with such wrongs.

TORT, Black's Law Dictionary (11th ed. 2019). The TCPA easily fits within this definition: It is a civil (not criminal) wrong, other than a breach of contract for which a remedy of damages may be obtained, either for negligent or intentional conduct. 47 U.S.C. § 227(b)(3). None of the above authorities requires that a "tort" arise from the common law. Indeed, the Sixth Circuit likened the TCPA's prohibition against prerecorded messages in a similar "ringless voicemail" case to the tort of intrusion upon seclusion in *Dickson*, 69 F.4th at 344.

Likewise, DONI's suggestion on pages 28 and 29 of its brief that Judge Quist found that VoApps "makes" the calls mischaracterizes the Court's language. The Court was discussing the process of how VoApps calling works, not making a legal determination of who "made" or "initiated" the call for liability purposes. ECF No. 50 at PageID.500. Plaintiff does not dispute that, in its role as a carrier, VoApps physically sent out the calls. However, it wasn't VoApps that decided to send prerecorded messages to cell numbers for whom it knew consent did not exist; it was *DONI*, and DONI should be held directly liable for doing so. Ex. 3, Resch Dep. at 8.

### A.    Actual Authority and Formal Agency.

Even if the Court does not find DONI directly liable for the TCPA violations at issue, it should nonetheless be held vicariously liable, based on common law agency principles. *See In re Dish Network, LLC*, 28 FCC Rcd. at 6584 (confirming availability of vicarious liability under TCPA). The parties agree that "control" is the touchstone of formal agency. DONI's brief argues that it cannot have controlled the calls, because (a) its instructions to DONI were purportedly minimal, and (b) its contract with VoApps disclaims agency. Neither is persuasive.

As explained in Plaintiff's motion, DONI hired VoApps to send these voicemail messages, and exercised substantial control over the minutiae of the calls:

- <u>Who</u>: ██████████████████████████████, <u>Ex. 5</u>, Gies Dep. at 9;

- <u>What</u>: ██████████████████████████████ <u>Ex. 8</u>
  (DONI's completed Custom Recording Request Form to VoApps);

- <u>When</u>: ██████████████████████████████████,
  <u>Ex. 7</u>, Britt Dep. at 15-16; <u>Ex. 5</u>, Gies Dep. at 11-13;

- <u>Why</u>: ██████████████████████████████████████, <u>Ex. 8</u>, <u>Ex. 5</u>, Gies Dep. at 9-10, 44;

- <u>Where</u>:  DONI had alleged debtors' addresses and directed VoApps to send messages only during permissible time of day, depending upon the physical location of the debtor, <u>Ex. 7</u>, Britt Dep. at 16.

- <u>How</u>: █████████████████████████████████████. <u>Ex. 5</u>, Gies Dep. at 8-9, <u>Ex. 3</u>, Resch Dep. at 14; <u>Ex. 7</u>, Britt Dep. at 7. In other words, VoApps did what DONI told it to do.

The agency inquiry does not require that the principal do *everything*; instead, it requires that the principal control or have the right to control the everyday aspects of the challenged conduct. Rest. (3d) of Agency § 1.01, cmt. f(1) (identifying "power to give interim instructions" as determinative of agency relationship). DONI did control the everyday aspects of the calling, and VoApps did exactly what DONI hired and expressly authorized it to do: deliver prerecorded messages to consumers' cell phones, subject to the above particulars, chosen by DONI. *See* <u>Ex. 4</u>, Agr. ¶ 1.1 (████████████████████████████████ ██████████████████████████). This case is, therefore, distinguishable from *Kern v. VIP Travel Servs.*, 2017 WL 1905868, at *6 (W.D. Mich. May 10, 2017), cited by DONI, because there the Court found nothing in the complaint supported the inference that the defendant had the right to control the vendor. ████████████████ ████████████████████████. <u>Ex. 4</u>, VoApps Agr. ¶ 6.

DONI's argument that VoApps warranted in the parties' contract that its Direct Drops are

not regulated under the TCPA is irrelevant to the agency analysis, because: (1) while VoApps'
warranty to DONI may be relevant to potential indemnification, it has nothing to do with
DONI's decision to use VoApps to send prerecorded messages to cell numbers for which it
lacked consent, and (2) ██████████████████████████████████████████

█████████████████████████████████████████ Ex. 4, Agr. ¶ 3.[28]

Likewise, DONI's argument that, although VoApps was authorized to send these
messages, it was not authorized to "violate the TCPA" is circular. A party cannot insulate itself
from TCPA liability by generically instructing its vendor to comply with the law while at the
same time directing the vendor to perform the illegal acts. *Krakauer*, 925 F.3d at 661 (affirming
class action jury verdict in TCPA case). Using a prerecorded message is not illegal in itself, so
long as the consumer consents. 47 U.S.C. § 227(b)(1)(A)(iii). Here, DONI told VoApps the
numbers it wanted called with a prerecorded voice, despite lacking consent to do so. It cannot
now disclaim the consequences of mass TCPA violations performed at its explicit instruction.

## B.    Apparent Agency

DONI should be held liable under an apparent agency theory, too. Apparent authority "is
the power held by an agent or other [non-agent] actor to affect a principal's legal relations with
third parties when a third party reasonably believes the actor has authority to act on behalf of the
principal and that belief is traceable to the principal's manifestations." Rest. (3d) of Agency §
2.03.

---

[28]    Similarly, the Restatement (3d) of Agency, § 1.02, holds that "[w]hether a relationship is
characterized as agency in an agreement between parties … is not controlling." *ABS Indus., Inc.
ex rel. ABS Litig. Tr. v. Fifth Third Bank*, 333 F. App'x 994, 1000 (6th Cir. 2009) (rejecting
party's assertion that it cannot be an agent given that the contract disclaims agency); *Krakauer*,
925 F.3d at 660. In this case, the course of dealings between DONI and VoApps demonstrates a
principal-agent relationship, in spite of any contractual disclaimer.

DONI chose the text of the messages played, which told recipients the messages were from DONI and concealed any involvement by VoApps (or anyone else):

> This is Dyck O'Neal with a message. This is an attempt to collect a debt. Please do not erase this message, and will you call us at 1-877-425-8998. Again, that number is 1-877-425-8998. [Ex. 8.]

DONI also chose a caller ID for these messages that traced back to DONI. Dkt. 36-4, Gies Dep. at 44. And when a consumer called the identified phone number, they were connected to DONI, whose representatives then attempted to collect the alleged debt. *See* Ex. 3, Resch Dep. at 48 (DONI generally has 25 agents available to handle callbacks from VoApps Direct Drops). It was DONI's design that VoApps was never mentioned during interactions with the consumer, so that consumers would call DONI and not VoApps. *Id.* Any reasonable recipient of these messages would think they originated from DONI… because that is how DONI designed them.

DONI does not quarrel with the above, which Plaintiff argued in her opening brief. Instead, it argues that there was no apparent agency because VoApps did not have access to DONI's systems. However, call recipients have no way of knowing who had access to whose systems, and given the text of the message would not know that anyone other than DONI was involved in the calls. *Bradley v. DentalPlans.com*, 617 F. Supp. 3d 326, 343 (D. Md. 2022) (rejecting limited view of what kind of manifestations a principal may make to reflect its apparent authority for calls in TCPA case). Here, the recorded message— ███████████ ███████████—literally told Plaintiff and the class that it "is Dyck-O'Neal with a message." Ex. 8. And it was *true*: the message was from Dyck O'Neal. *In re Dish Network, LLC*, 28 FCC Rcd. at 6592 (finding apparent authority may be reflected by the principal approving the script used, or authorizing use of its trade name). As explained in the Restatement (Third) of Agency, this type of direction creates apparent authority:

> For example, a principal may make a manifestation about an agent's authority by directing that the agent's name and affiliation with the principal be included in a listing of representatives that is provided to a third party. The principal may make a manifestation by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing the agent in charge of a transaction or situation.

Rest. (3d) of Agency § 2.03, cmt. c.

To establish apparent authority, "it is not necessary for the plaintiff to establish that the principal's manifestation induced the plaintiff to make a detrimental change in position…."[29] Rest. (3d) of Agency § 2.03, cmt. e*; Lushe v. Verengo Inc.*, 2015 WL 500158, at *5-6 (C.D. Cal. Feb. 2, 2015). Even so, any reasonable person who received a debt collection prerecorded message that said it was "Dyck-O'Neal with a message…" would reasonably rely upon such an assertion and believe that the message came from Dyck-O'Neal. As is apparent from her declaration, Plaintiff believed the calls were coming "from Dyck O'Neal." Ex. 9, Saunders Decl. ¶ 2. This is, therefore, the quintessential case for apparent authority.

## C.    Ratification

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Rest. (3d) of Agency § 4.01(1). A principal ratifies an act by "(a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." *Id.* § 4.01(2).

---

[29]    *See Lushe v. Verengo Inc.*, 2015 WL 500158, at *5-6 (C.D. Cal. Feb. 2, 2015) ("[T]he Restatement (Third) of Agency … makes clear that reliance is *not* necessary to establish apparent authority… The [TCPA] does not require the recipient of the call … to do anything in response to the prohibited call … to state a claim. Thus, for the Court to require a TCPA plaintiff to show some kind of 'detrimental reliance' for purposes of establishing agency by apparent authority is nonsensical, and would be to insert into the statute an element that is not there.").

DONI argues that it cannot have ratified the calls because it thought VoApps calls were exempt from the TCPA. Ratification does not depend on whether the principal knew the actor's conduct was illegal; rather, ratification depends on whether the principal affirms a prior "act" – here, sending VoApps messages to the cell numbers DONI instructed. A "principal may not ratify only one element of a single act or transaction; if the principal wishes to retain the benefits of an agent's action, the principal must also become subject to the legal consequences of the totality of the agent's conduct." Rest. (3d) of Agency § 4.01, Intro. Note.

DONI does not dispute whether it knew all material facts concerning the sending of these messages, and DONI does not dispute that it knowingly retained the messages' benefit by using callbacks from recipients to collect debts. In other words, DONI knew these messages were being made, believed they were successful for its debt collection purposes, and continued to use such to reap the debt collection and business resource benefits. There is no evidence that DONI returned the money it collected through use of VoApps or otherwise repudiated the challenged calls; instead, it has elected to retain their benefits. This is textbook ratification.

What is more, DONI *knew* that there was a substantial chance that the VoApps calls violated the TCPA because ███████████████████████████████████████████ ████████████████. Ex. 4, Agr. ¶¶ 3, 17. DONI sent these messages with eyes wide open as to their propriety under the TCPA. Sending the messages in spite of this, and retaining the benefits of the calls constitutes a straightforward ratification, and VoApps should be held liable therefor.

## III.    ADDITIONAL FACTS

Without limitation to her other arguments herein, Plaintiff desires to correct several inaccuracies in the "Factual Background" section of DONI's brief. First, Plaintiff disputes DONI's suggestion on page 2 of its brief that Plaintiff did not plead its possible vicarious

liability for the calls at issue. Rather, Plaintiff's Complaint repeatedly alleges that DONI or someone on its behalf made the calls for which DONI is liable. ECF No. 1, Compl. ¶¶ 12, 16, 27, 29, 35 (PageID.3-7). This allegation is sufficient under the circumstances, where it is undisputed that the prerecorded ringless voicemail messages Plaintiff received stated they were "Dyke-O'Neal with a message," and referenced Dyke O'Neal's phone number as the call back. Joint Fact Statement ¶ 5; Ex. 8 (script); Ex. 9, Saunders Decl. ¶ 6.

Plaintiff also disputes DONI's assertion on pages 3-4 of its brief that it would have been required to review "all" data and documents related to nearly 20,000 accounts, or that this would be an undue burden to produce. As discussed supra, Plaintiff's tabulation consultant/expert witness Jeff Hansen has devised a process to streamline and automate class member identification. Ex. 1, Hansen Rep. ¶¶ 27-28. What is more, Hansen's process was flawless: DONI has failed to identify a single false-positive (or false-negative) class member.

Plaintiff also objects to the assertions DONI makes on page 26 that DONI's VoApps agreement "dictated the parties' rights and responsibilities regarding the voicemails to be delivered," because this is a legal conclusion that also ignores the course of dealings between DONI and VoApps. *E.g., Spurlark v. Dimension Serv. Corp.*, 2022 WL 2528098, at *6 (S.D. Ohio July 7, 2022) (finding contractual disclaimer of agency relationship alone "does not negate the existence of an agency relationship" in TCPA case).

Finally, Plaintiff opposes DONI's use of its proffered expert, Jan Kostyun, whose opinion that identifying class members or ascertaining nonconsensual calls rests on zero applicable, real-world experience, an unreliable methodology that failed to even look at the data in this case, and is irrelevant or, at best, an improper parroting of defense counsel's arguments, as further discussed on pages 12-15, supra.

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant her motion

for class certification and for summary judgment.

Dated: November 2, 2023                          Respectfully submitted,

                                                 KAREN SAUNDERS

                                                 By: _s/ Alexander H. Burke_____

Alexander H. Burke
BURKE LAW OFFICES, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com

Larry P. Smith
David Marco
SMITHMARCO, P.C.
5250 Old Orchard Rd., Ste. 300
Skokie, IL 60077
Telephone: (888) 822-1777
lsmith@smithmarco.com
dmarco@smithmarco.com

*Counsel for Plaintiff*


**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.2(b)(ii), the undersigned certifies that this brief contains 12,248 words

according to Microsoft 365 Word, excluding the cover page, tables, signature block, and

certifications.

                                                  _s/ Alexander H. Burke_____

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on November 2, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/ Alexander H. Burke*