UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN SAUNDERS,

    Plaintiff,

v.

DYCK-O'NEAL, INC.,

    Defendant.

_____/

Case No. 1:17-cv-335

HON. ROBERT J. JONKER

**OPINION AND ORDER**

As part of its debt collection efforts, Defendant Dyck O'Neal, Inc. contracted with a vendor called VoApp to leave prerecorded "direct drop" voicemails on debtor's phones. After receiving one of these voicemails, Plaintiff Karen Saunders filed this suit under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. She now moves for class certification and summary judgment. (ECF Nos. 286 and 287). One issue in the briefing is whether Dyck O'Neal can be held liable for initiating or making the call either through direct liability or vicarious liability. For the reasons stated below, the Court holds that Dyck O'Neal can be held liable for initiating the calls in these circumstances.

    **I.**    **BACKGROUND**

The facts relevant to whether Dyck O'Neal can be held liable for initiating the call are not in dispute. Dyck O'Neal is a debt collection agency and mortgage servicer. In an effort to contact alleged debtors, Dyck O'Neal contracted with VoApps for a direct drop voicemail service. Under the contract, VoApps warranted that the voicemails were compliant with current law and were not regulated under the TCPA. (ECF No. 294-4 at PageID.4058). However, the contract also provided

that either party could terminate the agreement if a court of competent jurisdiction determined that the voicemail system violated the TPCA. (*Id.* at PageID.4055).[1]

To complete the direct drop voicemails, Dyck O'Neal provided VoApps with (1) the telephone number to be contacted, (2) the day and time the voicemails were sent, and (3) the caller ID number to be used. Dyck O'Neal also selected the message to be played. For example, one script of the voicemail message provided: "This is Dyck O'Neal with a message. This is an attempt to collect a debt. Please do not erase this message, and will you call us at 1-877-425-8998. Again, that number is 1-877-425-8998."  (ECF No. 294-8 at PageID.4091).

## II.     LEGAL STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin Coll.*, 440 F.3d 350, 357 (6th Cir. 2006).  While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.*  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

---

[1] The Court previously held in this case that the direct drop voicemails are calls under the TCPA. (ECF No. 50 at PageID.504).

### III.   ANALYSIS

The TCPA prohibits any person within the United States from "mak[ing] any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).  A principal can be held directly or vicariously liable for violations of the TCPA.  *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x. 365, 371 (6th Cir. 2015) (citing *In re DISH Network, LLC*, 28 FCC Rcd. 6574 (2013)).

Dyck O'Neal argues that it cannot be held directly liable because it did not send the messages, and any involvement was limited to performing clerical functions.  Dyck O'Neal further argues that it is not vicariously liable for VoApps' calls.  Plaintiff disagrees and contends Dyck O'Neal is liable under either theory.  The Court addresses each in turn.

**A.  Direct Liability**

A defendant who "initiates" a call is "directly" liable for TCPA violations that occurred during the call. *In re DISH Network*, 28 FCC Rcd. at 6583.  "[A] person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role . . . ." *Id.*  However, sometimes an entity "is so involved in the placing of a specific telephone call as to be directly liable for initiating it — by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example." *Id.*  That is the precise situation here.  Dyck O'Neal prepared the list of phone numbers, determined the prerecorded message, and controlled when the calls were made.

Dyck O'Neal counters that the Court previously held that VoApps—not Dyck O'Neal— made the calls.  But this argument misconstrues the previous opinion.  The Court was simply

3

describing the process of how the direct drop voicemail system worked. It is undisputed that VoApps physically sent out the calls. Dyck O'Neal's involvement in the calls, however, was not mere clerical work. It did not simply play a minor role in the causal chain. Dyck O'Neal maintained complete control and total involvement over the calls. Thus, the Court holds that Dyck O'Neal can be held directly liable for the calls.[2]

### B. Vicarious Liability

Even if Dyck O'Neal is not directly liable for the calls, it can be vicariously liable under common-law theories of actual authority or apparent authority.

#### 1. Actual Authority

An essential element of agency is the principal's right to control the agent's actions." Restatement (Third) Of Agency § 1.01 cmt. f. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Id.* at § 2.01.

Dyck O'Neal argues that that it did not control the calls because (1) its instructions to VoApps were minimal, and (2) the contract with VoApps disclaimed any agency relationship. Specifically, Dyck O'Neal contends that it did not authorize VoApps to make any calls in violation of the TCPA.

The contract is not dispositive. *See ABS Indus, Inc. v. Fifth Third Bank*, 333 F. App'x 994, 1000 (6th Cir. 2009) ("[w]hether a relationship is characterized as agency in an agreement between parties or in the context of industry or popular usage is not controlling.") (quoting Restatement

---

[2] Although the Court holds that Dyck O'Neal can be held liable for initiating the calls, the Court takes no position on the consent issue at this time.

(Third) of Agency § 1.02); *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 661 (4th Cir. 2019) ("At no time, however, have we suggested that a contractual disclaimer was alone dispositive."). More importantly, Dyck O'Neal's involvement was not minimal. It decided what phone numbers would be called. It decided what prerecorded voicemail messages would be played. It uploaded a "campaign" each day, on the day it wanted calls to be made. It had the message it wanted played during calls recorded and designed the prerecorded message and caller ID to conform to its debt collection purpose. It had alleged debtors' addresses and directed VoApps to send messages only during permissible time of day, depending upon the physical location of the debtor. By the terms of the contract, VoApps acted as a "passive conduit for the distribution of content and information." (ECF No. 294-4 at PageID.4058).

### 2. Apparent Authority

"[U]nder the theory of apparent authority, a principal will incur liability for the acts of an 'agent' if the principal 'held the agent out to third parties as possessing sufficient authority to commit the particular act in question, and there was reliance upon the apparent authority.'" *Keating*, 615 F. App'x at 374 (quoting *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998)). "Apparent authority exists when (1) the principal manifests that another is the principal's agent, and (2) it is reasonable for a third person dealing with the agent to believe the agent is authorized to act for the principal." *Deschamps v. Bridgestone Ams., Inc. Salaried Employees Ret. Plan*, 840 F.3d 267, 279 (6th Cir. 2016) (citing *Anderson v. Int'l Union, United Plant Guard Workers of Am.*, 150 F.3d 590, 593 (6th Cir. 1998)).

Dyck O'Neal also argues that there was no apparent agency because VoApps did not have access to Dyck O'Neal's system. But apparent authority is not so limited and "[m]anifestations creating such authority 'may take many forms.'" *Bradley v. DentalPlans.com*, 617 F. Supp. 3d

5

326, 344 (D. Md. 2022) (quoting Restatement (Third) of Agency § 2.03, cmt. c). Here, any reasonable person who received a debt collection prerecorded message that said it was "Dyck-O'Neal with a message" would reasonably rely upon such an assertion and believe that the message came from Dyck-O'Neal.[3]

### IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Dyck O'Neal can be held liable for initiating the voicemail calls under the TCPA, and its embedded motion (ECF Nos. 288, 289) for summary judgment to the contrary is DENIED.

Dated:  February 19, 2025                  /s/ Robert J. Jonker
                                            ROBERT J. JONKER
                                            United States District Judge

---

[3] Because Dyck O'Neal can be held liable under actual or apparent agency principles, the Court need not address ratification.